OPINION
{¶ 1} Juliette Hoffman appeals from the overruling, without a hearing, of her motion to vacate her earlier plea of guilty to endangering children, a second degree felony. Hoffman asserts as error the overruling of her motion without a hearing.
 {¶ 2} We affirm.
 I. {¶ 3} On or about February 15, 2005, Hoffman severely injured 5½-month-old Trevor Nash, for whom she was caring. On November 1, 2005, Hoffman pleaded guilty to the charge and on December 27, 2005 — after receiving a presentence investigation report — the trial court sentenced Hoffman to six years incarceration.
 {¶ 4} On January 27, 2006, Hoffman, represented by new counsel, moved to vacate her guilty plea. Counsel's memorandum in support contained the following factual representation:
 {¶ 5} "The Defendant herein, Juliette Hoffman, entered a guilty plea to child endangerment on November 5 (sic), 2005. She was sentenced to serve six years in the Ohio Reformatory for Women on December 29 (sic), 2005. Mrs. Hoffman contends that her trial attorney prepared neither himself nor her adequately for trial, leaving her no other realistic option than entering a guilty plea. Mrs. Hoffman was not herself when she entered her plea, and as such believes she should not have been allowed to do so. Her attorney isolated her from her family and friends, telling her she was not allowed to speak with anyone about her case. Further, the characteristics of the crime so isolated her from the rest of her community, that she could not even leave her home for months after being charged with this offense. Her attorney did not speak with her enough about the case, did not explain the way the system operated, did not go through the highly technical evidence with her, and overall did not make her feel comfortable with his representation. Mrs. Hoffman had no other choice than to enter a guilty plea, and wishes to vacate that plea to avoid a manifest injustice."
 {¶ 6} Hoffman's affidavit in support stated:
 {¶ 7} "1. I am Juliette Hoffman;
 {¶ 8} "2. I was the Defendant in a case involving Trevor Nash;
 {¶ 9} "3. My attorney was Richard Skelton;
 {¶ 10} "4. I wish to vacate my plea due to the reason I entered into it was due to the lack of preparation on the part of my attorney;
 {¶ 11} "5. Mr. Skelton failed to provide any reports from any experts and a highly technical allegations;
 {¶ 12} "6. Mr. Skelton failed to make himself available to me to discuss the status of my case;
 {¶ 13} "7. Mr. Skelton failed to interview witnesses such as: Donna Flint, Debbie Collen, experts, etc.;
 {¶ 14} "8. At the time of my plea I was medicated;
 {¶ 15} "9. Had my attorney prepared my case properly, I would not have been forced to enter into a plea;"
 {¶ 16} Dale Hoffman, Hoffman's husband, filed an affidavit that supported Hoffman's:
 {¶ 17} "1. My wife is Juliette Hoffman;
 {¶ 18} "2. Her attorney was Richard Skelton;
 {¶ 19} "3. Juliette only met with Mr. Skelton six times at most in his office over the ten months that he represented her;
 {¶ 20} "4. Juliette and Mr. Skelton only had six telephone conferences at most during the ten months that he represented her;
 {¶ 21} "5. I feel like Mr. Skelton did not give Juliette all the information, direction and explanation she needed throughout his representation;
 {¶ 22} "6. I feel like Mr. Skelton never really presented Juliette's side of this situation when in court;
 {¶ 23} "7. To my knowledge, Mr. Skelton never interviewed any of the witnesses whose names we gave him;
 {¶ 24} "8. At the time she entered her plea, Juliette was extremely depressed, which negatively affected her judgment;"
 {¶ 25} Finally, Moya Mote, an acquaintance of Hoffman, affied as follows:
 {¶ 26} "1. I have known Juliette Hoffman for approximately two years;
 {¶ 27} "2. I attended most of Juliette's court appearances in Case Number 2005C-R-85;
 {¶ 28} "3. Juliette's trial attorney was always late and rarely, if ever, spoke to her prior to entering the courtroom at her court appearances;
 {¶ 29} "4. I do not believe Juliette was prepared to enter a plea in her case;
 {¶ 30} "5. Juliette never knew what was happening in her case because her trial attorney didn't communicate it with her;
 {¶ 31} "6. Juliette's trial attorney did not ever appear to be prepared to actually present the case for trial;
 {¶ 32} "7. I do not believe Juliette's trial attorney properly investigated her case, including possible defenses and the victim's possible pre-existing medical issues, and he never interviewed any of her witnesses;
 {¶ 33} "8. When Juliette changed her plea to guilty, she was depressed, withdrawn, on medication, and had not been permitted to seek counseling until after she pled guilty."
 {¶ 34} In overruling the motion, the trial court stated in part that these affidavits were "not connected to the reality of the case and are clearly contradicted by the record and unworthy of consideration."
 II. {¶ 35} In State v. Francis (2004), 104 Ohio St.3d 490, 500, the supreme court stated that the court should hold a hearing on a motion to withdraw a plea, "unless it is clear that denial of the motion is warranted."
 {¶ 36} In our judgment, the trial court — in determining whether a hearing is required — is not limited to the four corners of the affidavits in support of the motion but, rather, is entitled to evaluate those affidavits in the context of the entire record of the case. This is what the trial court did here and, we think, properly so. Although it deals with petitions for post-conviction relief rather than motions to withdraw guilty or no contest pleas, we believe State v. Calhoun (1999),86 Ohio St.3d 279 supports the approach taken by the trial court.
 {¶ 37} The affiants claimed in broad generalities that Richard Skelton, Hoffman's trial attorney, was not prepared. They claim Skelton "failed to provide any reports from any experts"; "failed to interview witnesses such as: Donna Flint, Debbie Collen, experts, etc. . . ."; "did not give Juliette all the information, direction and explanation she needed"; "never really presented Juliette's side . . . when in court"; and didn't "properly investigate . . . possible defenses and the victim's possible preexisting medical issues."
 {¶ 38} The problem with these general allegations of unpreparedness is — as the trial court observed — that they are not connected to the reality of the case. Early in the investigation of this case, Hoffman admitted shaking Trevor several times out of frustration with his continued crying. There were no other witnesses to this shaking incident. Thus, we are at a loss to know what helpful information Mr. Skelton might have learned by interviewing "experts" or Donna Flint or Debbie Collen, and Hoffman provided no insight in this regard. We can conceive of no possible defenses and, again, Hoffman provided no insight as to what those defenses might be. As for investigating Trevor's "possible pre-existing medical issues," Hoffman was charged with recklessly abusing Trevor, resulting in serious physical harm to him. R.C. 2929.22(B)(1)(E)(2)(d). There can be no doubt that Hoffman was guilty as charged, regardless of the child's pre-existing physical condition, and nothing of record suggests Trevor was not a healthy baby before being shaken by Hoffman.
 {¶ 39} Turning to the claim that Mr. Skelton failed to provide Hoffman with needed information, direction, and explanation, Hoffman again provided the trial court with no insight as to how Mr. Skelton failed her in this regard. There can be no doubt that Hoffman understood what she was charged with and that she was going to go to prison. See her letter to Trevor's parents, attached to Mr. Skelton's letter to the court of December 20, 2005. Furthermore, when she changed her plea to guilty on November 1, Hoffman stated under oath in response to the court's questions that Mr. Skelton had "explained everything to (her) and answered all (her) questions" and that she was "satisfied with his advice, counsel and competence. . . ." She said she understood what the state was required to prove and that her plea of guilty was a complete admission of guilt. She stated she understood she could be sentenced to prison and that the maximum sentence was eight years and the maximum fine was $15,000. She said she understood the constitutional rights she waived by pleading guilty.
 {¶ 40} As for "never really presenting Juliette's side . . . when in court," again Hoffman presents no insight as to how Mr. Skelton failed her and, in any event, the record belies this assertion. This was not a defensible case and Mr. Skelton's efforts were properly focused on mitigation. Before the court imposed sentence, Mr. Skelton spoke eloquently on Hoffman's behalf. Furthermore, he prepared an elaborate mitigation package for the trial court, delivered a week before sentencing. The mitigation package contained Mr. Skelton's letter, wherein he represented that Hoffman had been honest about what happened, took responsibility for her actions, and was very remorseful. He expressed his opinion that Hoffman was "not a criminal" but a "special person caught in an unfortunate situation." The package also contained the above-mentioned letter from Hoffman to Trevor's parents, seven letters from persons attesting to Hoffman's good character, several family photos, a photo of Hoffman with her 2004-2005 preschool and childcare class, a booklet from the class with letters of appreciation, and medical records to contradict earlier reports of broken bones.
 {¶ 41} The affiants also asserted generally that Mr. Skelton did not make himself available to Hoffman to discuss her case. Dale Hoffman, the only specific affiant, said his wife's contacts with Mr. Skelton consisted at most of six office conferences and six telephone conferences over a ten-month period. Although Hoffman was charged with a serious offense and faced probable incarceration due to the seriousness of Trevor's injuries, this was a straightforward case. It is not evident to us how Hoffman was prejudiced by her lack of greater contact with Mr. Skelton.
 {¶ 42} Hoffman stated in her affidavit that when she pleaded guilty, she was medicated; Affiant Mote said Hoffman was on medication and depressed; Dale Hoffman said his wife was extremely depressed, which negatively affected her judgment. When she pleaded guilty, Hoffman told the trial court under oath she was not "under the influence of . . . medication." If this was untrue, it was not so apparent to the trial court that it felt obliged to inquire further. Mote and Dale Hoffman were not competent to testify that Hoffman was depressed or that her judgment was impaired. Hoffman did not claim that her judgment was impaired, and the record of her change of plea would not have supported that claim had she made it.
 {¶ 43} Hoffman claims that had Mr. Skelton prepared her case properly, she would not have been forced to plead guilty, and Affiant Mote said that Mr. Skelton "did not ever appear to be prepared to actually present the case for trial." As we have previously observed, this was not a case for trial. In addition to her sworn statement to the trial court when she pleaded guilty that she wasn't being threatened or forced by anybody to change her plea, the record demonstrates it was never Hoffman's intention to go to trial. Her letter to Trevor's parents expresses her contrition for injuring Trevor and her expectation of imprisonment. Mr. Skelton's December 20 letter to the trial court contained the following statement:
 {¶ 44} ". . . when Juliette came to see me at the outset of this case, she was very honest about what had happened. She has taken responsibility. She is extremely remorseful. She did not want to put the family of the victim through any additional stress by having hearings and/or litigation."
 {¶ 45} Finally, Affiant Mote said Hoffman was not allowed to seek counseling until after she pleaded guilty, but this is contradicted by the letters to the court from Hoffman's mother and stepmother, both dated December 15, 2005, contained in the abovementioned mitigation package.
 {¶ 46} Although there is some — albeit inadequate — affidavit support for some of the above-quoted memorandum in support of her motion to vacate plea, there is no support for Hoffman's statement that Mr. Skelton "isolated her from her family and friends, telling her she was not allowed to speak with anyone about her case." The fact that Hoffman's crime "isolated her from the rest of her community" cannot be blamed on Mr. Skelton.
 III. {¶ 47} Post sentence guilty pleas may only be vacated to correct manifest injustice. Crim.R. 32.1. Having familiarized ourselves with the record in this case, as the trial court was familiar with the case, we endorse its characterization of the affidavits as not connected to the reality of the case, clearly contradicted by the record, and unworthy of consideration. Upon scrutiny, the motion, memorandum in support, and affidavits do not portray any manifest injustice and we are confident that an evidentiary hearing would not establish manifest injustice.
 {¶ 48} The assignment of error is overruled.
 {¶ 49} The judgment will be affirmed.
 . . . . . . . . . .
Fain, J. and Donovan, J., concur.