[Cite as *State v. Pennington*, 2021-Ohio-3365.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200358 |
| | | TRIAL NO. B-1101474 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| WILLIAM PENNINGTON, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  September 24, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Patituce & Associates* and *Kimberly Kendall Corral*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Defendant-appellant William Pennington appeals the Hamilton County Common Pleas Court's judgment overruling his Crim.R. 32.1 motion to withdraw his guilty pleas to murder and two counts of aggravated robbery. We affirm the court's judgment.

{¶2} Pennington was indicted in 2011 on three counts of aggravated robbery and robbery, four counts of having weapons while under a disability, and single counts of aggravated murder, carrying a concealed weapon, and possession of cocaine, in connection with three incidents in a single week: the robberies of two different pizza-delivery drivers and the shooting death of a restaurant cashier during an armed robbery. Six months later, Pennington was convicted upon guilty pleas to a reduced charge of murder and two counts of aggravated robbery and was sentenced to agreed concurrent prison terms totaling 18 years to life. He did not appeal his convictions.

{¶3} In 2019, Pennington filed with the common pleas court a Crim.R. 32.1 motion to withdraw his guilty pleas. In this appeal from the denial of that motion, Pennington advances five assignments of error. Those assignments of error, distilled to their essence, challenge the common pleas court's exercise of its discretion in denying, and in declining to conduct an evidentiary hearing on, his motion to withdraw his guilty pleas, when newly discovered evidence demonstrated that his guilty pleas had been the unknowing and involuntary product of his trial counsel's ineffectiveness in advising him to plead, and that the common pleas court's decision denying the motion had been based on its misperception of the evidence of record and its consideration of evidence outside of the record. We address the assignments of error together and find that they are not well taken.

*Crim.R. 32.1 Motion to Withdraw Guilty Pleas*

{¶4} In his Crim.R. 32.1 motion, Pennington argued that withdrawal of his guilty pleas was necessary to correct a manifest injustice, because newly discovered evidence demonstrated that he was actually innocent in the cashier's murder and that his trial counsel had been constitutionally ineffective in advising him to plead guilty to the charge. Pennington asserted that he had been intent on going to trial until he was persuaded to accept the state's plea offer by his trial counsel's inaccurate assessment of the evidence against him and inaccurate statement concerning his agreed sentence.

{¶5} Pennington supported his motion with outside evidence in the form of the Cincinnati Police Department's summary of its investigation into the October 30, 2010 murder of the restaurant cashier. That summary included a statement to police made on December 3, 2010, by area drug dealer Benny Lyles, after a confidential informant told the police that Lyles had information about the murder. In an unrecorded interview, Lyles identified Pennington as one of two men who he saw mask up and cross the street toward the restaurant at the time of the murder. And from a video of the robbery, Lyles identified Pennington as the shooter. The summary also included a detective's "[n]ote" that, "[a]t this time, Benny Lyles is uncooperative with participating in [Pennington's] prosecution, however I will be making attempts to encourage his cooperation. * * * Lyles is on felony probation for drug trafficking * * *." Lyles was not included in the summary's witness list. And the state did not list him as a witness in its response to Pennington's discovery request.

{¶6} The summary provided other details of the murder investigation. The restaurant robbery homicide was captured on video. The video showed that the shooter had stood on a countertop to fire the fatal shot. From that countertop, the police lifted "shoe prints with visible wear patterns." The video also prompted police to look for someone who was experienced in armed robbery and familiar with the

3

area and the restaurant's layout. Eventually, at least nine tipsters identified Pennington as the shooter, leading detectives to review other recent armed robberies in the area. In the course of a parallel investigation into the pizza-delivery robberies, the police found one victim's wallet in a search of Pennington's room, and a second victim identified Pennington as the robber in a photo line-up and said that the gun in the video of the cashier's murder looked exactly like the gun he had been robbed with. In a search incident to Pennington's arrest on a probation violation, the police seized a .380-caliber handgun. After Pennington's arrest for the pizza-delivery robberies, his shoes were seized, and laboratory analysis of the shoes showed that they had made the prints on the restaurant's countertop "to the exclusion of all others." Also, Pennington's cellmate in the Hamilton County Justice Center told detectives that Pennington had confessed to killing the cashier after he refused to cooperate.

{¶7} The motion was also supported with an affidavit made in 2018 by Benny Lyles. In his affidavit, Lyles stated that because of "bad blood" between him and Pennington, he had given a "false" statement to police that he had seen a masked Pennington enter the restaurant at the time of the murder. Lyles insisted that his conscience now compelled him to "clear" the "[i]naccurate details" in his statement, because "actually [he] had seen [Pennington] & other friends earlier before 10 PM [but] was at home by 10 PM," when the murder occurred.

{¶8} Pennington provided his own affidavit. He averred that he had accepted the state's plea offer, because trial counsel told him that if he went to trial, Lyles's testimony would almost certainly convict him of aggravated murder and subject him to a sentence of life without the possibility of parole, but that if he accepted the state's plea offer with the agreed sentence, he would "be out at the age of 36." Pennington also offered the investigation summary in support of his assertion that, but for Lyle's "false" statement, he would not have pled guilty to

murder, because the only other evidence implicating him in the murder was his involvement in robbing pizza-delivery drivers and the fact that he wore the same style of sneakers as the restaurant shooter.

{¶9}   Finally, Pennington argues that the common pleas court denied his Crim.R. 32.1 motion based on its misperception of the evidence of record and its consideration of evidence outside of the record.  And he asks this court to remand this case for an evidentiary hearing to afford him the opportunity to support that argument with outside evidence in the form of statements made to the media by the common pleas court after the court denied his Crim.R. 32.1 motion.  But Pennington twice before sought to make those statements a part of the record on appeal.  We denied those motions.  And we decline his invitation here to revisit those rulings.

{¶10}   *The standard of review.*  Crim.R. 32.1 confers upon a trial court the discretion to permit withdrawal of a guilty or no-contest plea after sentencing "to correct manifest injustice."  The decision to grant or deny a Crim.R. 32.1 motion will not be disturbed on appeal unless the court abused its discretion.  *See State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraphs one and two of the syllabus; *State v. Brown*, 1st Dist. Hamilton No. C-010755, 2002-Ohio-5813, ¶ 13.

{¶11}  A counseled knowing, voluntary, and intelligent plea of guilty to an offense constitutes a complete admission of the facts underlying the offense and effectively removes from the case any issue concerning the defendant's factual guilt of the offense.  *See* Crim.R. 11(B)(1); *State v. Wilson*, 58 Ohio St.2d 52, 388 N.E.2d 745 (1979), paragraph one of the syllabus.  Therefore, a challenge to a conviction upon a guilty plea must be directed against the knowing, voluntary, or intelligent nature of that plea.  *See State v. Mynatt*, 1st Dist. Hamilton Nos. C-100298 and C-100319, 2011-Ohio-1358, ¶ 7-10, citing *State v. Spates,* 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992).

{¶12} In his motion, Pennington essentially argued that his guilty plea to murder had been the unknowing and involuntary product of his trial counsel's ineffectiveness. To prevail on that claim, Pennington bore the burden of demonstrating that his counsel's performance had been deficient in the sense that it was not reasonable under the circumstances, *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that there was a reasonable probability that, but for this deficiency, he would not have pled guilty, but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992).

{¶13} Crim.R. 32.1 does not expressly require a court to hold a hearing on a postsentence motion to withdraw a guilty plea. But this court has effectively adopted a rule that requires a hearing if the facts alleged in the motion, and accepted as true by the court, would require that the plea be withdrawn. The decision whether to hold a hearing is discretionary and may be reversed on appeal only if the court abused its discretion. *Brown* at ¶ 20.

{¶14} In deciding a Crim.R. 32.1 motion, the court must accord due deference to any supporting affidavits. But the court has the discretion to judge the credibility of an affidavit without first conducting an evidentiary hearing on the motion. In assessing an affidavit's credibility, and thus determining the need for a hearing, the court must consider all relevant factors, including (1) whether the judge reviewing the motion also presided at the plea hearing, (2) whether multiple affidavits contain nearly identical language or otherwise appear to have been drafted by the same person, (3) whether the affidavit contains or relies on hearsay, (4) whether the affiant is related to the defendant or otherwise interested in the success of his efforts, (5) whether the affidavit contradicts defense evidence, (6) whether the affidavit is contradicted by any other sworn statement of the affiant, and (7) whether

the affidavit is internally inconsistent. *Mynatt* at ¶ 18-20 (adopting for purposes of a Crim.R. 32.1 motion the factors set forth in *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), for assessing affidavits submitted in support of a postconviction petition).

{¶15} *No abuse of discretion.* The record of the proceedings at Pennington's plea and sentencing hearing contradicts his self-serving statement in his affidavit that his trial counsel had told him that, with the agreed sentence, he would "be out at the age of 36." At that hearing, Pennington acknowledged his understanding of the agreed indefinite 18-to-life sentence, of the potential maximum sentence of 38 years to life if his sentences were run consecutively, and that the Ohio Department of Corrections could place him on parole "if released from prison." He also said nothing when the trial court advised the murder victim's family spokesperson that the department of corrections or the parole board would determine "whether Mr. Pennington ever gets out." And he denied that his plea had been compelled by any threat or promise.

{¶16} Nor does the evidence support Pennington's claim that his trial counsel had been ineffective in urging him to plead to a reduced charge of murder rather than face an almost-certain aggravated-murder conviction based on Lyles's testimony. Lyles, in his 2019 affidavit, confirmed that he had earlier seen Pennington in the vicinity of the restaurant, but asserted that he had been home at 10:00 p.m., when the murder occurred. That effort by Lyles to "clear [up]" the "[i]naccurate details" in his 2010 statement to the police did not exonerate Pennington in the cashier's murder. The common pleas court would not have abused its discretion in discrediting that "cl[arification]," when it directly contradicted his statement to the police, and the judge deciding Pennington's Crim.R. 32.1 motion had also presided at his plea and sentencing hearing. *See Mynatt*, 1st Dist. Hamilton Nos. C-100298 and C-100319, 2011-Ohio-1358, at ¶ 18-20. The summary of the

7

murder investigation belies Pennington's contention that Lyles's statement to the police was the only evidence of his guilt in the cashier's murder. And the summary does not show conclusively that Lyles would not have testified at trial, or that Pennington's trial counsel knew, or should have known, that Lyles would not testify.

*We Affirm*

{¶17} Pennington did not sustain his burden of demonstrating a prejudicial deficiency on the part of his trial counsel in advising him to plead guilty to the reduced charge of murder. Thus, he failed to show that withdrawal of his guilty pleas was necessary to correct a manifest injustice. We, therefore, hold that the common pleas court did not abuse its discretion in denying, without an evidentiary hearing, his Crim.R. 32.1 motion to withdraw his guilty pleas. Accordingly, we overrule the assignments of error and affirm the common pleas court's judgment denying the motion.

Judgment affirmed.

**ZAYAS, P.J.,** and **MYERS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.