[Cite as *State v. Little*, 2022-Ohio-1295.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                    :

                                       No. 21AP-272
v.                                                     :     (M.C. No. 2015 CRB 25686)

Nyshawn M. Little,                                     :     (REGULAR CALENDAR)

      Defendant-Appellant.                   :

---

D E C I S I O N

Rendered on April 19, 2022

---

**On brief:** *Zachary M. Klein*, City Attorney, *Melanie R. Tobias-Hunter*, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni*.

**On brief:** *The Law Office of Eric J. Allen, Ltd.*, and *Eric J. Allen*, for appellant.

---

APPEAL from the Franklin County Municipal Court

NELSON, J.

{¶ 1} Defendant-appellant Nyshawn M. Little became dissatisfied with the results of his negotiated plea of guilty to disorderly conduct as a fourth-degree misdemeanor (down from charges of first-degree misdemeanor assault and domestic violence) and its accompanying 30-day jail sentence after it triggered revocation of his parole and an additional 36 months and more in prison relating to his earlier conviction for murder. (A motion and affidavit filed by Mr. Little on August 28, 2017 recites that he "received a thirty six month sanction" for the parole violation, *see* Little affidavit at ¶ 9, and the September 9, 2020 affidavit he submitted from Brandy Koffel states that "the parole board sent him back to prison for thirty-six months," *see* Koffel Affidavit at ¶ 7, while his current briefing to us states that "[h]e has been in jail ever since" the misdemeanor plea and "has served over five years" in connection with the resulting parole violation, *see* Appellant's Brief at 6. The

prosecutor's brief here refers back to his earlier "36 months in prison" statement, Appellee's Brief at 1, but the trial court found that "[t]o this day, [he] remains in ODRC custody in relation to [the murder] case," April 26, 2021 Decision & Entry at 1.) He brings this appeal from the trial court's denial of his third motion to withdraw the misdemeanor guilty plea.

**{¶ 2}** As recounted by Mr. Little, he was "convicted of murder in Franklin County in 1994 and given a sentence of eighteen years to life. [He] was released on November 12, 2012 on parole. On November 23, 2015, he plead guilty to the offense of disorderly conduct and [was] sentenced to thirty days in jail with twenty-two days credited. The parole board held a hearing and sent him back to prison." December 15, 2020 Motion to Withdraw Plea at 10 (capitalizations adjusted).

**{¶ 3}** Mr. Little's December 15, 2020 Motion to Withdraw Plea, at issue here, explicitly disavowed any claim of ineffective assistance of counsel. "The prior motions filed in this case dealt with the ineffective assistance [assertedly] received by defendant," but that "claim and the facts related to that claim have nothing to do with this motion," he emphasized. *Id.* at 11. "The claim in this case is that the Defendant is innocent, not that he received ineffective assistance of counsel." *Id.*

**{¶ 4}** Arguments that the misdemeanor plea had not been knowing and voluntary had failed before. Mr. Little's April 26, 2016 Motion to Vacate Conviction (filed some five months after his misdemeanor plea and sentence) had been predicated on argument that his "plea was not knowingly, intelligently and voluntarily given" because he had not understood that his new offense would result in parole revocation. 2016 Motion at 1, 2. Treating that filing as a plea withdrawal motion, the trial court denied it as unsubstantiated and as relating only to an "indirect, collateral consequence" of his plea. February 7, 2017 Decision & Entry at 2. Mr. Little's appeal of that decision was dismissed because he failed to file a brief. *State v. Little*, 10th Dist. No. 17AP-178 (May 2, 2017 Journal Entry of Dismissal). Mr. Little returned to the trial court with a Motion to Withdraw Guilty Plea filed August 28, 2017. Again asserting that his plea had not been knowing and voluntary and that his counsel had not advised him properly, Mr. Little submitted that he had been told "that he would serve no more than nine months" imprisonment on what would be a post-release control violation rather than the 36 months he received in prison for the parole violation. 2017 Motion at 4, 5 (also attaching his affidavit attesting that he had been told

"that he could only go back to prison for nine months," and that "he did not strike the prosecuting witness"). The trial court denied that motion as barred by the earlier determination, among other reasons. August 27, 2018 Decision & Entry at 1. Mr. Little's attempted appeal of that decision was dismissed as untimely. *State v. Little*, 10th Dist. No. 18AP-911 (August 12, 2019 sua sponte dismissal).

{¶ 5} Although conceding that "[a] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case," 2020 Motion at 5, Mr. Little urged that new facts now establish his actual innocence and thereby entitle him to withdraw his plea, *id.* at 12 (complaining witness "has wholly repudiated any violence against her by the defendant"). While submitting no new affidavit himself, he proffered a September 9, 2020 affidavit from Brandy Koffel, the complaining witness from the 2015 misdemeanor case. Ms. Koffel, who according to Mr. Little's 2020 Motion "is living in Utah" where she executed her affidavit, *id.* at 12, attested that "the incident did not occur as it was portrayed." Koffel Affidavit executed September 9, 2020 and filed December 15, 2020 at ¶ 8. Contrary to her account to police in 2015, Ms. Koffel averred in her 2020 affidavit (phrased largely in the third person) that "Nyshawn Little did not grab her by her hair. He did not slam her face into the wall and her glasses did not break." *Id.* at ¶ 3 (adding that "[s]he was angry with him and that is why he [sic; presumably 'she'] told the police he did those things"). "She understood that any conviction would send him back to prison," she continued, and had "wanted the prosecutors to dismiss the case. They refused." *Id.* at ¶ 4, 5. In short, the affidavit continued, "there was no physical violence * * *, Nyshawn Little has NEVER, caused physical harm or threaten[ed] me with physical harm." *Id.* at ¶ 9.

{¶ 6} On March 8, 2021, the trial court conducted what the parties at argument here acknowledged was in effect a hearing on whether to schedule an evidentiary hearing on Mr. Little's 2020 Motion to Withdraw. *See* Mar. 8, 2021 Tr. at 5 (court to decide "whether I agree that we should look into it further or not"); 12 (state urges denial of defendant's request "without a hearing"). At that time, the trial court indicated without objection that it had reviewed a transcript of Mr. Little's November 3, 2015 arraignment, *id.* at 4-5, and the state without objection offered exhibits including a photograph of

Ms. Koffel that had been mentioned at arraignment, along with a copy of her written witness statement to Columbus police, *id*. at 11.

{¶ 7} The trial court issued its Decision and Entry denying Mr. Little's 2020 motion to withdraw his guilty plea on April 26, 2021. After rehearsing the procedural history of the case and reciting relevant legal standards, the trial court found that "the complaining witness's recanting affidavit presented over five years after the incident lacks credibility. [Hearing] Exhibit 1 is photographic evidence of a red mark underneath the prosecuting witness'[s] eye, evidence that there was indeed physical contact from defendant. That evidence is consistent with the description of events provided in the prosecutor's discovery packet (Exhibit 4) compiled at the outset of the case in November of 2015. The contemporaneous information is more credible than the affidavit of the prosecuting witness five years later." April 26, 2021 Decision & Entry at 3. The trial court denied the motion without further ado.

{¶ 8} On appeal, Mr. Little mounts what he casts as two assignments of error:

> [I.] The trial court erred in denying appellant's motion to withdraw a guilty plea.
>
> [II.] The trial court erred in not holding an evidentiary hearing.

Although the two assignments could be presented as analytically distinct, the briefing here causes us to review them together as urging that the trial court erred in denying the motion without holding an evidentiary hearing. *See, e.g.,* Appellant's Brief at 9 (arguing in "Conclusion" that "the trial court abused its discretion by failing to hold a hearing and hear the testimony of the alleged victim in the case") *id*. at 10 (requesting "remand for [a] hearing").

{¶ 9} We begin with the Rule. Criminal Rule 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." The rule is universally understood to mean that a motion to withdraw a guilty plea after sentence has been imposed may be granted only on a showing of manifest injustice. *See, e.g., State v. Stumpf*, 32 Ohio St.3d 95, 104 (1987) ("In order to withdraw a guilty plea after sentencing has taken place, a defendant must show that such withdrawal is necessary to correct manifest injustice"). It

follows that "[a] defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. "Manifest injustice relates to some fundamental flaw in the proceedings which results in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Chandler*, 10th Dist. No. 13AP-452, 2013-Ohio-4671, ¶ 6 (citation omitted). It " 'is an extremely high standard, which permits a defendant to withdraw his guilty plea only in extraordinary cases.' " *Id.*, quoting *State v. Tabor*, 10th Dist. No. 08AP-1066, 2009-Ohio-2657, ¶ 6 (further citation omitted).

{¶ 10} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Smith* at paragraph two of the syllabus. "[T]his court's review of the trial court's denial of a post-sentence motion to withdraw a guilty plea or the decision not to hold a hearing is limited to a determination of whether the trial court abused its discretion." *Chandler*, 2013-Ohio-4671, at ¶ 8, citing *State v. Conteh*, 10th Dist. No. 09AP-490, 2009-Ohio-6780, ¶ 16; *see also*, *e.g.*, *State v. Spivakov*, 10th Dist. No. 13AP-32, 2013-Ohio-3343, ¶ 12 ("A trial court's decision to deny a post-sentence motion to withdraw a guilty plea and the decision whether to hold a hearing on the motion are subject to review for abuse of discretion"). "[T]he trial court has great discretion in assessing the credibility of affidavits used to support a Crim.R. 32.1 motion." *State v. Barrett*, 10th Dist. No. 11AP-375, 2011-Ohio-4986, ¶ 11. A trial court abuses its discretion when it issues an unreasonable, arbitrary, or unconscionable decision, including one based on an error of law. *Chandler* at ¶ 8 (citations omitted).

{¶ 11} In *Chandler*, the appellant there had moved to withdraw his guilty plea, alleging "that he was actually innocent of the offenses. * * * [He] presented affidavits of two co-defendants, who both swore that appellant did not participate in the robbery or murder. Another affiant swore that he lied about appellant allegedly confessing to the murder. The trial court denied appellant's motion without a hearing, concluding that appellant's previous admissions to being involved in the crimes contradicted the exculpatory statements of his accomplices and his own current claim of innocence." *Id.* at ¶ 4.

{¶ 12} After reciting that a hearing on a motion to withdraw a guilty plea must be held only "if the facts alleged by the defendant, accepted as true, would require that the

defendant be allowed to withdraw the plea," *id.* at ¶ 7, and after noting that such determinations are reviewed for abuse of discretion and rehearsing that standard, *id.* at ¶ 8, we determined that the defendant's guilty plea there was dispositive of his motion: "Appellant based his motion to withdraw on his claim of actual innocence. That claim is not properly before this court on appeal, as ' "a counseled plea of guilty to a charge removes the issue of factual guilt from the case." ' " *Id.* at ¶ 9, quoting *State v. McMichael*, 10th Dist. No. 11AP-1042, 2012-Ohio-3166, ¶ 36, quoting *State v. Beckwith*, 8th Dist. No. 91399, 2009-Ohio-1244, fn. 4, and citing *Stumpf*, 32 Ohio St.3d at 104-05. "Appellant has not challenged the trial court's acceptance of his guilty plea, so we have no cause to re-examine issues those pleas properly resolved." *Id.* at ¶ 9 (citations omitted).

{¶ 13} *McMichael* had in fact dispensed with an actual innocence claim in similar summary fashion. *Id.* at ¶ 36 ("Defendant's contention [of innocence] is not rightly before this court on appeal, as 'a counseled plea of guilty to a charge removes the issue of factual guilt from the case,' " quoting *Beckwith* at fn. 4, citing *Stumpf*). *Compare, e.g., Conneaut v. Donofrio*, 11th Dist. No. 2008-A-0072, 2009-Ohio-2947, ¶ 18 (in case in which trial court had held plea withdrawal hearing, appeals court observes that "an offender is typically not allowed to withdraw a guilty plea, post-sentence, based on a claim of innocence or, as here, mitigating circumstances where there is no that claim [sic] that the plea was defective for not being knowingly, intelligently or involuntarily [sic] made").

{¶ 14} At least under the circumstances of this particular case, however, we believe the trial court was prudent in not rejecting the motion out of hand and in analyzing more closely whether Ms. Koffel's affidavit warranted further hearing. For sake of argument, we are prepared to accept that in extraordinary cases, new attestations of fact, which an effective lawyer might not reasonably have anticipated in counseling his client, may be adduced after a conviction by plea and give rise to the possibility that actual innocence marks the conviction as a manifest injustice. *Compare, e.g., State v. West*, 1st Dist. No. C-150587, 2017-Ohio-5596, ¶ 19 ("Relief upon a claim of actual innocence based on outside evidence may not be granted under the postconviction statutes, * * * but may be had under Crim.R. 33(A)(6) and 32.1"). To be sure, the Supreme Court of Ohio's guidance in *Stumpf* leads us to conclude that where the knowing, intelligent, and voluntary nature of the plea are not at issue, the fact of the counseled guilty plea itself weighs heavily in the calculus for

determining a plea withdrawal motion, but *Stumpf,* too, looked to other facts from the time of the event and sentencing. The Supreme Court reasoned: "A plea of guilty is a complete admission of guilt. * * * * Appellant makes no claim that his plea was not entered knowingly, intelligently, and voluntarily. * * * * Based upon appellant's guilty plea *and the evidence adduced at his sentencing hearing*, we cannot say that the [three judge capital case] panel abused its discretion or that appellant met his burden of showing that manifest injustice had occurred." 32 Ohio St.3d at 104 (emphasis added).

{¶ 15} By the same token, as *Chandler* and *McMichael* reflect, because Mr. Little disclaimed reliance on ineffective assistance of counsel or on other failings alleged to invalidate the regularity of the plea hearing itself, this matter is not like cases in which we have construed the standard that "[a] hearing is required [on a plea withdrawal motion] if the facts alleged by the defendant *and* accepted as true would require the court to permit that plea to be withdrawn" to mean that a hearing is required where alleged facts "*if* accepted as true, would establish a manifest injustice." *See State v. Williams*, 10th Dist. No. 03AP-1214, 2004-Ohio-6123, ¶ 6, 10 (emphasis added); *see also*, *e.g.*, *State v. Kent*, 10th Dist. No. 03AP-722, 2004-Ohio-2129, ¶ 8 (same interpretation); *State v. Miranda*, 10th Dist. No. 13AP-271, 2013-Ohio-5109, ¶ 11 (echoing certain other cases in expressing the standard as " 'if the facts alleged by the defendant, accepted as true, would require * * *' " and then equating " 'accepted as true' " with " 'as alleged' "); *compare*, *e.g.*, *State v. Lopez-Tolentino,* 10th Dist. No. 19AP-280, 2019-Ohio-4778, ¶ 9 (" 'if the defendant fails to submit evidence containing sufficient operative facts to demonstrate that his plea was not entered into knowingly and voluntarily, and the record indicates that the defendant is not entitled to relief, the trial court may dismiss the motion without a hearing' ") (citation omitted). Mr. Little does not (and procedurally cannot) argue at this juncture that his guilty plea was not appropriately counseled.

{¶ 16} Under somewhat analogous circumstances, the court of appeals for the Twelfth District affirmed a trial court judgment that a recanting co-defendant's affidavit was not sufficiently credible to support post-sentence withdrawal of a guilty plea. *State v. Robinson*, 12th Dist. No. CA2013-05-085, 2013-Ohio-5672. The movant there did "not argue that his guilty plea was not knowingly, intelligently, or voluntarily made," but rather that "his guilty plea is invalid based on the so-called 'new evidence' of [the co-defendant's]

recantation of his prior statements to police implicating" the movant. *Id.* at ¶ 16. "The trial court * * * could properly determine the affidavit * * * lacked sufficient credibility." *Id.* at ¶ 17 (then citing *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir.1991) and other authority for proposition that " '[r]ecanting affidavits and witnesses are viewed with extreme suspicion,' " *id.* at ¶ 18, noting the four-year lag between the guilty plea and the proffered affidavit, *id.*, and agreeing with *State v. Hudach*, 11th Dist. No. 2003-T-0110, 2004-Ohio-6949, ¶ 46, that " 'a change in potential testimony of a state's witness is insufficient to withdraw a plea postsentence,' " *id.* at ¶ 21).

{¶ 17} At least here, where the knowing, intelligent, and voluntary nature of the plea is not now in significant dispute but a post-sentence motion to withdraw a guilty plea is based on an assertion of actual innocence predicated on the complaining witness's affidavit, and the trial court discounted the credibility of that affidavit in denying the withdrawal motion without a hearing, we will take the lead of other appellate districts in making reference to the credibility factors identified in *State v. Calhoun*, 86 Ohio St.3d 279 (1999), as we assess the trial court's determination. *Compare* Appellee's Brief at 18-25 (prosecutor's *Calhoun* analysis); *compare also*, *e.g.*, *West*, 2017-Ohio-5596, at ¶ 29-40 (First District rejects ineffective assistance of counsel argument for post-sentence plea withdrawal but then analyzes actual innocence affidavit evidence pursuant to *Calhoun*; *Alford*-plea case in which movant throughout had made "constant and consistent protestations of innocence," judge who took plea was not judge who denied withdrawal motion, etc.); *State v. Mynatt*, 1st Dist. No. C-100298, 2011-Ohio-1358, ¶ 10, 20 (movant's claim of actual innocence "may fairly be read" to allege pleas were unknowing and unintelligent "because he had mistakenly believed that his wife would have testified against him" at trial; *Calhoun* factors used to assess credibility of affidavits "and thus to determine the need for an evidentiary hearing on, a Crim.R. 32.1 motion").

{¶ 18} We first broached the *Calhoun*-style analytical approach with regard to Rule 32.1 motions in *State v. Yahya*, 10th Dist. No. 10AP-190, 2011-Ohio-6090, but there, in that decision preceding *Chandler* and *McMichael* and where claims of ineffective assistance of counsel *were* at issue, we concluded that "[b]ecause the facts alleged by appellant, if accepted as true, might support the grant of appellant's motion, we find that the trial court

abused its discretion by denying appellant's motion without holding a hearing." *Yahya* at ¶ 23.

{¶ 19} As we observed in *Yahya*, "[a]lthough *Calhoun* involved a petition for postconviction relief, other appellate courts have applied it in the context of motions to withdraw pleas under Crim.R. 32.1." *Id.* at ¶ 8, fn. 2 (citing to decisions from the Court of Appeals for the First, Second, Eighth, and Eleventh Districts, and citing approvingly to *State v. Christley*, 11th Dist. No. 99-P-0022, 2000 Ohio App. Lexis 2140 (May 19, 2000), which had remanded matter to the trial court to explain why it had discounted affidavits). "Absent an explanation of why the trial court chose not to credit * * * appellant's sworn statement, we are unable to conduct a meaningful review of whether the trial court acted arbitrarily in discrediting [that] affidavit," we said. *Id. Calhoun* counsels that an affidavit, as sworn under penalty of perjury, " 'should not lightly be deemed false,' " we noted, *id.*, quoting *Calhoun*, 86 Ohio St.3d at 284, and it also directs that " '[a] trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so' " in order to permit meaningful review, *id.*, quoting *Calhoun* at 285.

{¶ 20} Drawing on *State v. Moore*, 99 Ohio App.3d 748 (1st Dist.1994), *Calhoun* instructs that in assessing the credibility of affidavit testimony, the trial court "should consider all relevant factors," including whether: (1) the same judge who reviewed the petition also had presided at trial; (2) multiple affidavits "contain nearly identical language, or otherwise appear to have been drafted by the same person"; (3) the affidavit relies on hearsay; (4) the affiant is a relative of the petitioner "or otherwise interested in the success of the petitioner's efforts"; and (5) the affidavit contradicts "evidence proffered by the defense at trial." *Calhoun*, 86 Ohio St.3d at 285. "Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." *Id.*, citing *Moore.* "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit * * * lacks credibility. Such a decision should be within the discretion of the trial court." *Id.*

{¶ 21} In the context of this case, applying the *Calhoun* mode of analysis is consistent with our view that " 'a movant must establish a reasonable likelihood that the withdrawal is necessary to correct a manifest injustice before a hearing is required.' " *State*

*v. Rembert*, 10th Dist. No. 16AP-543, 2017-Ohio-1173, ¶ 20, quoting *State v. Whitmore*, 2d Dist. No. 06-CA-50, 2008-Ohio-2226, ¶ 11. *See, e.g., State v. Downey*, 5th Dist. No. 19 CA 29, 2020-Ohio-4118, ¶ 26, 28 (trial court need not hold evidentiary hearing on motion to withdraw guilty plea "if the affidavit testimony is deemed to lack credibility"; performing *Calhoun* analysis in determining that "the trial court did not abuse its discretion with the denial of Appellant's *Motion to Withdraw Guilty Plea* without holding a hearing"); *State v. Pennington*, 1st Dist. No. C-200358, 2021-Ohio-3365, ¶ 14 (trial court "has the discretion to judge the credibility of an affidavit without first conducting an evidentiary hearing on the [post-sentence withdrawal] motion. In assessing an affidavit's credibility, and thus determining the need for a hearing, the court must consider" the *Calhoun* factors); *State v. Smith*, 1st Dist. No. C-180081, 2019-Ohio-3642, ¶ 35 (same effect); *State v. Watters*, 11th Dist. No. 2016-G-0094, 2017-Ohio-5640, ¶ 14 (applying *Calhoun* factors in affirming denial of post-sentence motion); *State v. Hoffman*, 2d Dist. No. 2006 CA 19, 2006-Ohio-6119, ¶ 36 (using *Calhoun* factors to evaluate affidavits "in the context of the entire record of the case").

**{¶ 22}** Here, unlike in *Yahya*, the trial court did summarize its basis for discounting the affidavit and denying Mr. Little's post-sentence plea withdrawal motion without a hearing. We are able to review that ruling against the record in light of the *Calhoun* considerations.

**{¶ 23}** We observe that the trial judge here who denied Mr. Little's motion to withdraw the plea was the same judge who had presided over the earlier plea hearing. *Compare* April 26, 2021 Decision & Entry *with* November 23, 2015 Plea Transcript. Although not dispositive here, that fact (the first *Calhoun* consideration, as adjusted for the Criminal Rule 32.1 context) weighs in favor of the trial court's exercise of its discretion. *Compare* Plea Tr. at 3 (Mr. Little's lawyer at plea and sentence tells trial court that "Mr. Little has been very forthcoming in this case. I think it was just a bad mistake that got a little bit out of control").

**{¶ 24}** With regard to the text of the affidavit testimony on its face, the trial court was not presented with multiple affidavits that appeared to be drafted by the same person; for this motion, Mr. Little relied on the affidavit of Ms. Koffel (who was referred to in the 2015 Complaint as Mr. Little's "live in girlfriend"). The lone affidavit does, however, itself

speak in different voices (much like the Little affidavit from 2017), referring to the affiant in the third person as "she" or "her" some 12 times before moving to the first person "we" and "me" in the final paragraph. It is signed by a direct observer, the complaining witness. For purposes of our review of the trial court's ruling, we will assume that Ms. Koffel, removed from the event by some five years and roughly 2,000 miles, maintained no personal stake in Mr. Little's efforts when she signed the affidavit.

{¶ 25} The affidavit does, of course, contradict what Ms. Koffel told police at the time of the event; that is its design and its significance. In finding that "the contemporaneous information [offered by Ms. Koffel in 2015] is more credible than [her] affidavit * * * five years later," April 26, 2021 Decision & Entry at 3, the trial court referred to materials of record including Ms. Koffel's November 2, 2015 handwritten and signed statement to police:

> I was asleep in bed when Nyshawn Little came and pulled the blankets off of me and said he's going to work. I didn't respond to him & I heard him take my phone and charger. I told him to give me my phone he said he's not going nowhere until I give him all of the keys for him to go to work. He came into the bedroom and grabbed the back of my hair and pushed my face in the wall and broke my glasses. I grabbed the car keys and went to the gas station and called 911. I was sitting in the car in the front on the apartments and he snuck up on the car and opened the door at that time a van stopped and called 911. He took the car keys and walked back to the apartment. I sat in the car with the gentleman in the white van until police arrived.

The trial court also referred to contemporaneous "photographic evidence [admitted by consent in the withdrawal motion proceedings] of a red mark underneath the prosecuting witness'[s] eye * * *." April 26, 2021 Decision & Entry at 3.

{¶ 26} We conclude that the trial court acted within its discretion in determining that "the complaining witness's recanting affidavit presented over five years after the incident lacks credibility." *Id.* at 3. Other courts have noted that the passage of significant time between a witness's initial account and a recantation can undermine credibility. *See*, *e.g.*, *Robinson*, 2013-Ohio-5672 at ¶ 18-19 (need to examine recanting witness testimony with great suspicion "is especially true here considering the significant lapse in time spanning nearly four years between when Robinson entered his guilty plea and when he filed his motion to withdraw"; "Typically, 'the delayed disclosure of a witness's recantation

weighs against the believability and truthfulness of the witness[,]' " *Houston v. State*, 8th Dist. No. 98118, 2012-Ohio-4404, ¶ 41).

{¶ 27} Having reviewed the record, we also cannot say that the trial court acted beyond its discretion in suggesting that the photographic evidence somewhat buttressed Ms. Koffel's initial account.

{¶ 28} And as *Stumpf* underscores, Mr. Little's own concessions at the time of the plea conflict with the affidavit he now invokes. This is not a case (like *West*) in which a criminal defendant consistently proclaimed his innocence. Rather, as in *Stumpf*, there was for purposes of the plea withdrawal motion at issue (and in light of the earlier failed plea withdrawal attempts), "no claim that his plea was not entered knowingly, intelligently, and voluntarily." *Compare Stumpf* at 104 *with* Appellant's Brief at 5-6 ("The claim in this case is that the Defendant is innocent, not that he received ineffective assistance of counsel" [or, we would add, that the trial court erred at the plea hearing]). Under these circumstances, *Stumpf* sums up this situation, too: "Based upon appellant's guilty plea and the evidence adduced at his sentencing hearing, we cannot say that the [trial court] abused its discretion or that appellant met his burden of showing that manifest injustice had occurred. Thus, we uphold the [trial court's] decision not to permit appellant to withdraw his plea." *Stumpf* at 104-05. *See also*, *e.g.*, *State v. Dye,* 1st Dist. No. C-120483, 2013-Ohio-1626, ¶ 14 ("On the record before us [including recanting affidavits from victim there and her mother], we cannot say that the common pleas court, in discounting the credibility of the affidavits without an evidentiary hearing, abused its discretion. And in the absence of credible evidence demonstrating that the withdrawal of [the] guilty pleas was necessary to correct a manifest injustice, we cannot say that the court abused its discretion in overruling [the] motion").

{¶ 29} We overrule Mr. Little's two assignments of error and we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

KLATT and JAMISON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____