[Cite as *State v. West*, 2017-Ohio-5596.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150587 |
| | | TRIAL NO. B-9001777-A |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| JACK WEST, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part and Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  June 30, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Brian Scott Hicks*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1} Defendant-appellant Jack West appeals the Hamilton County Common Pleas Court's judgment overruling his Crim.R. 32.1 motion to withdraw his guilty pleas to sexual battery. We reverse the judgment in part, upon our determination that the court abused its discretion in overruling the motion without first conducting an evidentiary hearing on West's claim of actual innocence.

{¶2} In 1990, West was indicted on eight counts of rape. The offenses were alleged to have occurred between 1984 and 1987. The alleged victim, West's son Jason, was during those years, under the age of 13. Jason reported the offenses in 1989. But West had left the country in 1988 and did not learn of the indictment until late 1990. West then waived extradition, but the Hamilton County Prosecuting Attorney did not seek to extradite him, and his finances prevented him from returning to the United States until May 1997.

{¶3} In February 1998, West entered guilty pleas to four reduced charges of sexual battery and was sentenced to agreed concurrent terms of confinement of two years on each count. In the same proceeding, West also entered guilty pleas to three counts of intimidation, charged in a separate indictment in the case numbered B-9800303. For the intimidation offenses, the court imposed consecutive four-to-ten-year prison terms, suspended those sentences, and placed West on probation for five years, beginning upon his release from prison on the sexual-battery charges. Three days later, the trial court adjudicated West an habitual sexual offender under the version of R.C. Chapter 2950, Ohio's sex-offender-classification statutes, in effect from 1996 to 2007, commonly known as "Megan's Law." *See* Am.Sub.H.B. No. 180, 146 Ohio Laws, Part II, 2560, amended in 2003 by Am.Sub.S.B. No. 5, 150 Ohio Laws, Part IV, 6556.

{¶4} In his direct appeal, we affirmed West's convictions, but reversed his habitual-sexual-offender adjudication. *State v. West*, 134 Ohio App.3d 45, 730

N.E.2d 388 (1st Dist.1999). On remand, the trial court determined that West was a sexually-oriented offender, requiring him to register annually as a sex offender for a period of ten years following his release from prison.

{¶5} In September 2015, West filed with the common pleas court a motion to withdraw his guilty pleas, along with a motion to appoint counsel to assist him in withdrawing his pleas, on the grounds that his trial counsel had been constitutionally ineffective in advising him to plead, and that he is actually innocent of sexual battery. In this appeal, he advances a single assignment of error, contending that the common pleas court abused its discretion in overruling his motion to withdraw his pleas without a hearing. The challenge is well taken in part.

### Common Pleas Court's Jurisdiction to Entertain the Motion

{¶6} West did not designate in his motion a statute or rule under which he sought relief. But he argues on appeal that he was entitled to relief under Crim.R. 32.1. Thus, on his postsentence motion to withdraw his guilty pleas, West bore the burden of demonstrating that withdrawing his pleas was necessary "to correct manifest injustice." Crim.R. 32.1; *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. The common pleas court's decision overruling the motion was discretionary and may not be disturbed on appeal unless the court abused its discretion. *See Smith* at paragraph two of the syllabus.

{¶7} On appeal, the state, citing *Special Prosecutors v. Judges*, 55 Ohio St.2d 94, 378 N.E.2d 162 (1978), argues that the common pleas court should have dismissed West's Crim.R. 32.1 motion for lack of jurisdiction. We disagree.

{¶8} *Special Prosecutors and Davis.* In *Special Prosecutors*, the Ohio Supreme Court granted a writ of prohibition to prevent a trial court from proceeding to trial after granting a Crim.R. 32.1 motion to withdraw a guilty plea, because the court of appeals had affirmed the conviction upon that plea in the direct appeal. The court acknowledged the doctrine of the law of the case, noting that

3

"[t]he judgment of the reviewing court is controlling upon the lower court as to all matters within the compass of the judgment." *Id.* at 97. But the court granted the writ upon the "general rule" that an appeal from a judgment of conviction divests a trial court of jurisdiction over the case, unless the appellate court remands the case to the trial court for a ruling on a pending motion, or the trial court's exercise of jurisdiction is in aid of the appeal or is otherwise "not inconsistent with [the jurisdiction] of the appellate court to review, affirm, modify or reverse the appealed judgment." *Id.* at 97, citing *In re Kurtzhalz*, 141 Ohio St. 432, 48 N.E.2d 657 (1943), paragraph two of the syllabus. Applying that rule, the court concluded that the trial court had had no jurisdiction to entertain the Crim.R. 32.1 motion, because its judgment granting withdrawal of the guilty plea and ordering a trial was "inconsistent with the judgment of the Court of Appeals affirming the trial court's conviction premised upon the guilty plea." *Special Prosecutors* at 97.

{¶9} In *State ex rel. Cordray v. Marshall,* 123 Ohio St.3d 229, 2009-Ohio-4986, 915 N.E.2d 633, the Supreme Court cited *Special Prosecutors*, but relied on the doctrine of the law of the case to hold that the common pleas court had lacked jurisdiction to grant a postconviction motion pursuant to Crim.R. 57(B) and Civ.R. 60(B) to vacate a judgment of conviction on the ground that the trial court had erred by failing to instruct the jury on a lesser-included offense, when that ground had been rejected in affirming defendant's conviction on direct appeal. *Id.* at ¶ 27–28, 42.

{¶10} In *State v. Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, the Supreme Court addressed whether, in light of *Special Prosecutors*, a lower court has jurisdiction to entertain a Crim.R. 33(A)(6) motion for a new trial based on newly discovered evidence after the conviction has been affirmed in the direct appeal. The court held that a lower court does have jurisdiction, when the issue presented by the

motion could not have been raised in the direct appeal because it depends for its resolution upon evidence outside the record in that appeal. *Id.* at ¶ 34 and 37.

{¶11} With respect to its decision in *Special Prosecutors*, the court in *Davis* stated that, while the doctrine of the law of the case was not the basis for its decision in *Special Prosecutors*, that doctrine would not prevent the trial court, in entertaining Davis's Crim.R. 33(A)(6) motion, from considering the effect of previous decisions on his newly-discovered-evidence claim. *Id.* at ¶ 37. In that context, the court took the "opportunity to specify that the holding in *Special Prosecutors* does not bar the trial court's jurisdiction over posttrial motions permitted by the Ohio Rules of Criminal Procedure." These motions, the court declared, "provide a safety net for defendants who have reasonable grounds to challenge their convictions and sentences. The trial court acts as the gatekeeper for these motions and, using its discretion, can limit the litigation to viable claims only." *Id.* at ¶ 37.

{¶12} We have, before and since *Davis*, consistently permitted a lower court to entertain a Crim.R. 33(A)(6) motion for a new trial based on newly discovered evidence after the judgment of conviction was affirmed on direct appeal. *See, e.g., State v. Hawkins*, 1st Dist. Hamilton No. C-110291, 2011-Ohio-5645, ¶ 6; *State v. Gaines,* 1st Dist. Hamilton No. C-090097, 2010-Ohio-895, ¶ 36. And we have, since our decision in *State v. Akemon,* 1st Dist. Hamilton No. C-080443, 2009-Ohio-3728, followed *Special Prosecutors* to hold that a court has no jurisdiction to decide any Crim.R. 32.1 motion after an affirmance on direct appeal. We are confronted here with the question whether, in the wake of *Davis*, a court has jurisdiction to entertain a Crim.R. 32.1 motion to withdraw a guilty plea filed after the conviction upon that plea has been affirmed on direct appeal, when the issue presented by the motion could not have been raised on direct appeal. We conclude that it does.

{¶13} The other appellate districts that have addressed this issue essentially fall into two camps: those that read *Davis* restrictively to apply to only Crim.R.

33(A)(6) motions; and those that read *Davis* more expansively as an explanation of the rule of *Special Prosecutors*.

{¶14} In *State v. Crangle*, 9th Dist. Summit No. 25735, 2011-Ohio-5776, the Ninth Appellate District applied *Special Prosecutors* to hold that, after Crangle's conviction had been affirmed on direct appeal, the common pleas court had no jurisdiction to entertain his Crim.R. 32.1 motion to withdraw his guilty plea on the ground that the trial court had not complied with the statutory mandates concerning postrelease control. *Id.* at ¶ 4-6. Although Crangle's Crim.R. 32.1 motion did not depend for its resolution on outside evidence, the Ninth District examined the impact of *Davis* on *Special Prosecutors* and concluded that *Davis* had left unaltered the rule of *Special Prosecutors* establishing an absolute jurisdictional bar to a Crim.R. 32.1 motion filed after an affirmance on direct appeal. The court in *Crangle* assigned special significance to the use of the word "posttrial" in the Supreme Court's statement in *Davis* concerning the role of "posttrial motions" in "provid[ing] a safety net for defendants who have reasonable grounds to challenge their convictions." *Id.* at ¶ 9, quoting *Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 759 N.E.2d 516, at ¶ 37. That statement, the Ninth District insisted, evinced a clear intention to limit the holding in *Davis* to Crim.R. 33(A)(6) motions, because a postconviction Crim.R. 32.1 motion is a "postsentence," not a "posttrial," motion. *Crangle* at ¶ 10.

{¶15} The Third Appellate District in *State v. Panning*, 3d Dist. Van Wert No. 15-15-11, 2016-Ohio-3284, and the Eighth Appellate District in *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, applied *Special Prosecutors* to hold that the common pleas court had no jurisdiction to entertain Crim.R. 32.1 motions filed after an affirmance on direct appeal. Unlike Crangle, Panning and Moon had sought to withdraw their guilty pleas on claims that depended on outside evidence. *See Panning* at ¶ 5 (ineffective counsel in coercing and threatening defendant to plead); *Moon* at ¶ 9-10, 13 (ineffective counsel in failing to request and review a

6

search warrant and to move to suppress evidence seized on the warrant). Like the Ninth District in *Crangle*, the Third and Eighth Districts focused on the Supreme Court's use of the phrase "posttrial motion" to conclude that *Davis* applies only to "posttrial" Crim.R. 33(A)(6) motions and leaves intact *Special Prosecutors*'s absolute jurisdictional bar on postappeal Crim.R. 32.1 motions to withdraw a guilty plea. *See Panning* at ¶ 10; *Moon* at ¶ 40-41.

{¶16} The Second and Seventh Appellate Districts have read *Davis* as an explanation of the rule of *Special Prosecutors*. *See State v. Lauharn*, 2d Dist. Miami No. 2011 CA 10, 2012-Ohio-1572; *State v. Staffrey*, 7th Dist. Mahoning Nos. 10 MA 130 and 10 MA 131, 2011-Ohio-5760.

{¶17} In *Staffrey*, the Seventh District rejected the state's argument that, under the rule of *Special Prosecutors*, the common pleas court had no jurisdiction to entertain Staffrey's postappeal Crim.R. 32.1 motion. *Staffrey* at ¶ 31. The court determined that, after *Davis*, an appeals court's decision affirming a conviction does not "necessarily" deprive a lower court of jurisdiction to entertain a postconviction Crim.R. 32.1 motion to withdraw a guilty plea. *Id.* at ¶ 36. The court did not then decide the case under *Special Prosecutors*, but affirmed the overruling of Staffrey's Crim.R. 32.1 motion on the ground that his claims were barred under the doctrine of res judicata, because they could have been raised on direct appeal. *Id.*

{¶18} In *Lauharn*, the defendant appealed from the overruling of his motion to withdraw his guilty pleas. Applying the rule in *Special Prosecutors*, the Second District dismissed the appeal, because the common pleas court lacked jurisdiction to entertain Lauharn's Crim.R. 32.1 motion while his case was on direct appeal. *See Lauharn* at ¶ 7 and 13. Quoting *Davis*'s statement that *Special Prosecutors* does not bar jurisdiction over "posttrial" motions permitted by the criminal rules, the court went on to note the effect on Lauharn's Crim.R. 32.1 motion of its dismissal of his appeal from the overruling of the motion: because the judgment overruling the

7

motion was a nullity, the motion remained pending in the common pleas court; and because the direct appeal had by then been decided, the common pleas court "now has jurisdiction to address [the motion]." *Lauharn* at ¶ 13, quoting *Davis*, 131 Ohio St.3d 1, 2011-Ohio-5028, 759 N.E.2d 516, at ¶ 37.

{¶19} We believe that for purposes of providing a means for advancing a claim of actual innocence based on evidence outside the record on appeal, the distinction between a "posttrial" Crim.R. 33(A)(6) motion for a new trial and a "postsentence" Crim.R. 32.1 motion to withdraw a guilty plea should be one without a difference. Relief upon a claim of actual innocence based on outside evidence may not be granted under the postconviction statutes, R.C. 2953.21 et seq., but may be had under Crim.R. 33(A)(6) and 32.1. *See State v. Powell*, 90 Ohio App.3d 260, 264, 629 N.E.2d 13 (1st Dist.1993) (holding that the postconviction statutes do not confer jurisdiction to grant relief upon a claim of actual innocence, because the claim does not demonstrate a constitutional violation in the proceedings that resulted in the petitioner's conviction); *State v. Campbell*, 1st Dist. Hamilton No. C-950746, 1997 WL 5182 (Jan. 8, 1997) (holding that the proper vehicle for asserting an actual-innocence claim based on newly discovered evidence is a Civ.R. 33 motion for new trial); *State v. Dye*, 1st Dist. Hamilton No. C-120483, 2013-Ohio-1626, ¶ 7-9 (reading defendant's postsentence Crim.R. 32.1 actual-innocence claim, based on affidavits by the victim and her mother exonerating him, to allege that his guilty pleas had been unknowing and unintelligent because he had mistakenly believed that they would falsely incriminate him at trial). If, as the Third, Eighth, and Ninth Appellate Districts would have it, *Davis* applies only to Crim.R. 33(A)(6) motions, and *Special Prosecutors* continues to operate as an absolute jurisdictional bar to Crim.R. 32.1 motions filed after an affirmance on appeal, a court may grant postappeal relief upon outside evidence of actual innocence only to a defendant convicted after a trial, and not to a defendant convicted upon a guilty or no-contest plea.

{¶20} We are, therefore, not persuaded that the statement in *Davis* concerning the role of "posttrial motions" can be so narrowly parsed as to confine the case's holding to postconviction motions challenging convictions resulting from a trial. Rather, we agree with the Second and Seventh Appellate Districts that the Supreme Court's intention in *Davis* was to clarify the rule of *Special Prosecutors*, with a view toward advancing the interest, embodied in the criminal rules permitting postconviction motions, in "provid[ing] a safety net for defendants who have reasonable grounds to challenge their convictions." Accordingly, we join those districts in holding that an appeals court's decision affirming a judgment of conviction does not deprive a lower court of jurisdiction to entertain a Crim.R. 32.1 motion to withdraw a guilty plea, when the issue presented by the motion could not have been raised on direct appeal.

{¶21} ***The court below had jurisdiction to entertain West's Crim.R. 32.1 motion.*** The ineffective-counsel and actual-innocence claims advanced by West in his postsentence Crim.R. 32.1 motion to withdraw his guilty pleas could not have been raised in his direct appeal, because those claims depended for their resolution upon evidence outside the record of the proceedings leading to his convictions upon those pleas. The claims could not be said to have been within the compass of this court's judgment affirming West's convictions in his direct appeal. Nor would a judgment by the common pleas court granting withdrawal be inconsistent with our judgment affirming his convictions. Consequently, our judgment would not, under the doctrine of the law of the case, operate to bar West's ineffective-counsel and actual-innocence claims. And it did not, under the rule of *Special Prosecutors*, deprive the common pleas court of jurisdiction to entertain those claims as presented in West's postsentence Crim.R. 32.1 motion.

{¶22} Accordingly, we hold that the common pleas court had jurisdiction to entertain the motion.

### *West's Crim.R. 32.1 Motion*

{¶23} Turning to West's challenge on appeal to the overruling of his Crim.R. 32.1 motion, we note that a counseled knowing, voluntary, and intelligent guilty plea constitutes a complete admission of the facts underlying the charged offense and thus effectively removes from the case any issue concerning the defendant's factual guilt of the offense. Crim.R. 11(B)(1); *State v. Wilson*, 58 Ohio St.2d 52, 388 N.E.2d 745 (1979), paragraph one of the syllabus. Therefore, any challenge to a conviction upon a guilty plea is limited to the knowing, voluntary, or intelligent nature of that plea. *See State v. Mynatt*, 1st Dist. Hamilton Nos. C-100298 and C-100319, 2011-Ohio-1358, ¶ 7-10, citing *State v. Spates,* 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992).

{¶24} ***Ineffective-counsel claim.*** In his motion, West essentially argued that his pleas had been the unknowing product of his trial counsel's ineffectiveness, because he did not learn until after he had "settled" in Florida in 2005 that his sexual-battery convictions, which under Megan's Law had subjected him to only a ten-year registration obligation, subjected him to a lifetime-registration requirement in Florida. To prevail on his ineffective-counsel claim, West bore the burden of demonstrating that his counsel's performance had been deficient in the sense that it was not reasonable under the circumstances, *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that there was a reasonable probability that, but for this deficiency, he would not have pled guilty, but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992).

{¶25} We note that Megan's Law's registration and notification requirements are nonpunitive, collateral consequences of a conviction. *State v. Cook*, 83 Ohio St.3d 404, 423, 700 N.E.2d 570 (1998). For that reason, under Megan's Law, courts

declined to impose on a trial court the duty to advise a defendant of those consequences before accepting a guilty or no-contest plea. *See, e.g., State v. Heverly*, 7th Dist. Columbiana No. 09 CO 4, 2010-Ohio-1005, ¶ 20-21; *State v. Abrams*, 2d Dist. Montgomery No. 17459, 1999 WL 957652 (Aug. 20, 1999).

{¶26} With his Crim.R. 32.1 motion, West presented the issue whether his trial counsel's alleged failure to advise him concerning Florida's lifetime sex-offender-registration requirement constituted an outcome-determinative deficiency in counsel's performance resulting in a manifest injustice. The common pleas court, in deciding that issue, and this court, in assessing that decision, need not decide whether West's counsel had a duty to inform him that his Ohio sexual-battery convictions would subject him to a lifetime sex-offender-registration requirement in Florida. Even if the circumstances could be said to have given rise to such a duty, West did not demonstrate a deficiency in his counsel's performance in that regard, when he failed to support his motion with any evidence showing that counsel had failed to so inform him. *See State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989) (citing *Strickland* at 697 to hold that a court deciding an ineffective-counsel claim need not inquire into both the performance and prejudice components of the analysis, when the defendant has made no showing on one component).

{¶27} At his plea hearing, West made plain his intention to relocate to Florida following his release from prison, when he asked for, and received from the state, a recommendation that he serve for his intimidation offenses "a normal kind of probation * * * which could be transferred down [to Florida]," where his mother resided. The record may also be said to suggest that West would not have pled if he had known of Florida's lifetime registration requirement, because at his sex-offender hearing, conducted three days after he had entered his guilty pleas, he orally moved to withdraw his guilty pleas on the ground that his trial counsel had failed to advise

him that he would be subject to Ohio's ten-year sex-offender-registration requirement.

{¶28} West assigned as error in his direct appeal the overruling of that motion, and we held that the court had not abused its discretion. We noted that, at the sex-offender hearing, West's counsel, who had also represented him at his plea hearing, denied telling him that Megan's Law did not apply to him. And we concluded that, in the absence of any "indication" that counsel had given "improper legal advice," West had failed to demonstrate a manifest injustice. *West*, 134 Ohio App.3d at 51, 730 N.E.2d 388.

{¶29} The challenge to trial counsel's effectiveness presented by West in his 2015 motion to withdraw his guilty pleas suffers from the same infirmity: he did not support his claim with an affidavit averring, or some other evidentiary material demonstrating, that his counsel had failed to advise him concerning Florida's sex-offender-registration requirement. Implicit in the common pleas court's judgment denying West relief under Crim.R. 32.1 upon his ineffective-counsel claim is the court's determination that West had failed to sustain his burden of demonstrating an outcome-determinative deficiency in his counsel's performance resulting in a manifest injustice. In the absence of some evidence that West's trial counsel did not advise him concerning Florida's sex-offender registration requirement, we can only concur in that assessment. We, therefore, hold that the common pleas court did not abuse its discretion in denying relief on that ground. *See State v. Sansone*, 10th Dist. Franklin No. 11AP-799, 2012-Ohio-2736, ¶ 11-16 (holding that while an explanation of the sex-offender-registration consequences of defendant's guilty plea under Megan's Law would have been "well-advised," trial counsel's alleged deficiency in that regard could not be said to constitute a manifest injustice).

{¶30} ***Actual-innocence claim.*** West's claim that he is actually innocent of the sexual-battery charges to which he had pled was supported with

evidentiary material that, if accepted as true, would require the withdrawal of his pleas. We, therefore, conclude that the court abused its discretion in denying relief under Crim.R. 32.1 on that ground without first conducting an evidentiary hearing.

{¶31} In support of his actual-innocence claim, West offered the affidavit of his son Jason West, who averred that he had "NEVER been molested and/or touched in any form, type or manner sexually by [his] father," and that he had "NEVER" witnessed "speech or behavior * * * of [his father] indicat[ing] any type, form or manner of any sexual interest in [him]." Thus, West's actual-innocence claim may fairly be read to allege that his guilty pleas were not voluntarily entered, because he had felt compelled to accept a plea agreement offering reduced charges and agreed sentences based on his fear that his son would falsely testify against him and he would be convicted of multiple counts of rape if he insisted on going to trial.

{¶32} Throughout the proceedings resulting in his convictions, West consistently maintained that he was innocent of any sex offense involving his son. At the hearing on his motion to dismiss his rape indictment on speedy-trial grounds, West stated that when he learned that there was a "warrant out for [his] arrest, on charges that [he] was not guilty of * * * [he] wanted to go back [to the United States] and clear [his] name."

{¶33} At West's plea hearing, the assistant prosecuting attorney stated that Jason West, who was by then an adult, was present at the hearing, and that Jason and his mother had "both indicated that [the plea agreement was] a satisfactory way to resolve the case." But West expressed discomfort with pleading guilty to sexual battery and persisted in proclaiming his innocence. When asked during the Crim.R. 11 colloquy whether he had been "forced" or "threatened" to plead, West responded, "No," but only after stating, "Well, it seems I'm under the—either I go to trial and be framed or accept the plea." And when asked for his plea to the first sexual-battery

count, he responded, "Guilty," but only after stating, "Well, I never molested my son, but I'm forced—."

{¶34} Before he was sentenced, West again insisted that he "didn't molest [his] son." He then went on to affirm his understanding of his guilty pleas, but added that "circumstances here force me to enter this plea rather than stand trial and risk being wrongfully convicted on bad faith charges that carry severe penalties."

{¶35} Three days later, at his sex-offender hearing, West orally moved to withdraw his guilty pleas. He alleged not only that his trial counsel had misinformed him about Megan's Law, but that his pleas had been "the result of coercion and intimidation, pressure, threats, et cetera, an *Alford* plea."

{¶36} West continued to proclaim his innocence in his direct appeal. As we noted, he unsuccessfully challenged the overruling of his oral motion to withdraw his pleas, made at his sex-offender hearing. He also submitted, and we overruled, an assignment of error challenging his guilty pleas on the grounds that they were not voluntary, that trial counsel had been ineffective in advising him to plead, and that he is actually innocent. We held that the trial court had not abused its discretion in accepting West's guilty pleas, because the record supported a determination that, despite his protestations of innocence, his pleas had been voluntary and intelligent, when he had been represented by competent counsel, had pled to reduced charges with agreed sentences, and had understood the nature of those charges. *West*, 134 Ohio App.3d at 49-50, 730 N.E.2d 388, citing *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and applying *State v. Piacella*, 27 Ohio St.2d 92, 271 N.E.2d 852 (1971), syllabus.

{¶37} Crim.R. 32.1 does not expressly require a court to hold a hearing on a postsentence motion to withdraw a guilty plea. But this court has effectively adopted a rule that requires a hearing if the facts alleged in the motion, and accepted as true by the court, would require that the plea be withdrawn. The decision whether to hold

14

a hearing is discretionary and may be reversed on appeal only if the court abused its discretion. *State v. Brown*, 1st Dist. Hamilton No. C-010755, 2002-Ohio-5813.

{¶38} In deciding a Crim.R. 32.1 motion, the court must accord due deference to a supporting affidavit. But the court has the discretion to judge the credibility of an affidavit without first conducting an evidentiary hearing on the motion. In assessing an affidavit's credibility, and thus determining the need for a hearing, the court must consider all relevant factors, including (1) whether the judge reviewing the motion also presided at the plea hearing, (2) whether multiple affidavits contain nearly identical language or otherwise appear to have been drafted by the same person, (3) whether the affidavit contains or relies on hearsay, (4) whether the affiant is related to the defendant or otherwise interested in the success of his efforts, (5) whether the affidavit contradicts defense evidence, (6) whether the affidavit is contradicted by any other sworn statement of the affiant, and (7) whether the affidavit is internally inconsistent. *Mynatt*, 1st Dist. Hamilton Nos. C-100298 and C-100319, 2011-Ohio-1358, at ¶ 18-20 (adopting for purposes of a Crim.R. 32.1 motion the factors set forth in *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), for assessing affidavits submitted in support of a postconviction petition).

{¶39} Rejecting West's actual-innocence claim without an evidentiary hearing necessarily required the common pleas court to wholly discount the credibility of Jason West's affidavit exonerating his father. But the common pleas court judge who reviewed West's Crim.R. 32.1 motion had not presided at his plea hearing. Jason West's affidavit was internally consistent, based on first-hand knowledge, and corroborative of West's constant and consistent protestations of innocence. While he is related to West, Jason West was also the alleged victim of the sexual-battery offenses to which West had pled guilty, and his interest would logically have lain with opposing, rather than supporting, the withdrawal of those pleas. And there is nothing in the record that would suggest that Jason had any

15

other interest in West's success on his motion to withdraw, beyond remedying an injustice. We, therefore, conclude that the common pleas court abused its discretion in discounting the credibility of Jason West's affidavit without first conducting a hearing. *Compare Dye*, 1st Dist. Hamilton No. C-120483, 2013-Ohio-1626, ¶ 12-14 (finding no abuse of discretion in discounting the credibility of exculpatory affidavits of victim and her mother, and in deciding the Crim.R. 32.1 motion without a hearing, when defendant acknowledged "fault" and apologized at sentencing and did not assert his innocence at the plea or sentencing hearing or in a direct appeal).

{¶40} And we conclude that the court abused its discretion in deciding West's Crim.R. 32.1 motion in a "paper hearing[]." *See Calhoun* at 285. Because West supported his actual-innocence claim with evidence that, if accepted as true, would require the withdrawal of his pleas, we hold that the court abused its discretion in denying relief under Crim.R. 32.1 on that ground without first conducting an evidentiary hearing.

### *We Affirm in Part and Reverse in Part*

{¶41} In the unique circumstances presented in this case, including West's conviction upon *Alford* pleas, we hold that the common pleas court abused its discretion in deciding without an evidentiary hearing the claim of actual innocence based on newly discovered evidence advanced in his Crim.R. 32.1 motion to withdraw his pleas. Accordingly, we reverse the court's judgment in part and remand for further proceedings consistent with the law and this opinion. In all other respects, the judgment is affirmed.

Judgment accordingly.

CUNNINGHAM, P.J., and DETERS, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.