[Cite as *State v. Allen*, 2025-Ohio-5555.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

       Appellee

v.

 James Allen

       Appellant

Court of Appeals No.  {48}L-24-1116

Trial Court No.  CR0202301917

**<u>DECISION AND JUDGMENT</u>**

Decided: December 12, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Randy L. Meyer, Assistant Prosecuting Attorney, for appellee.

Morgan R. Dineen and Jon Paul Rion, for appellant.

* * * * *

**{¶ 1}** The defendant-appellant, James Allen, appeals the April 17, 2024 judgment

of the Lucas County Court of Common Pleas that denied his post-sentence motion to

withdraw his guilty plea.  As set forth below, we affirm, in part, and reverse, in part, and

remand this matter back to the trial court for a hearing.

**I.  Background**

**{¶ 2}** On June 13, 2013, James Allen and co-defendant Ronald Rooker were

indicted on charges of aggravated murder, aggravated burglary, and aggravated robbery,

plus related firearm specifications for each offense.  (Lucas County case No. CR13-

1917). The state alleged that on May 18, 2013, the defendants broke into the home of the victim, J.S., intending to rob him. During the course of the robbery, J.S. was shot and killed. The record indicates that J.S. and Rooker lived close to one another in Waterville Township, in Lucas County.

{¶ 3} Subsequently, Phillip Allen and Adam Anderson were charged in a separate indictment for their role in the robbery and killing of J.S. *State v. Phillip Allen,* Lucas County Court of Common Pleas case No. CR13-3179. James Allen ("James") and Phillip Allen ("Phillip") are half-brothers. The trial court consolidated the cases against James and Phillip and severed the cases against Rooker and Anderson. The decision to sever was based upon the State's proffer that Rooker and Anderson had made "inculpatory" statements against James and Phillip.

{¶ 4} At a pretrial hearing on April 23, 2014, the trial court heard arguments regarding James's motion to require the State to identify a confidential informant by name. According to the State, an unidentified person had contacted Toledo Police Detective Lawrence Anderson two weeks after the murder, claiming to have evidence in this case.

{¶ 5} Detective Anderson testified at the hearing. Under cross-examination by defense counsel, the detective testified that an unidentified person contacted him by telephone on June 4, 2013, 17 days after the murder, to report that a black jacket "was possibly involved [in this case]" and that it "had been left in [the person's] possession." The unidentified person told Detective Anderson that the jacket belonged to someone,

2.

identified only as "Spook," who "was possibly involved" in this case. The person gave the detective the names of two other people—identified as "Ghost" and "Double A"—who may also have been involved. No testimony was offered regarding the identities of Spook, Ghost, or Double A.

{¶ 6} The day after the phone call, Detective Anderson "met with the individual and picked up the jacket," which was in a plastic grocery bag. The detective placed the jacket in a brown paper sack and delivered the sack and its contents to the Lucas County Sheriff's Department, which was investigating this case. Detective Anderson testified that he prepared a report that did not identify the person by name because that person "fear[ed] for their safety."

{¶ 7} At the hearing, defense counsel argued that it was "essential" to the defense to learn the identity of the person who provided the jacket to Detective Anderson, especially how the person "came into contact" with this "central piece of evidence in the trial against [James]." The trial court took the matter under advisement.

{¶ 8} Before the court ruled on the matter, the parties reached an agreement whereby James agreed to plead guilty to an amended charge of complicity to commit aggravated murder, and the State agreed to dismiss the remaining counts and attendant gun specifications. The parties also stipulated to an agreed-upon sentence of 25 years in prison.

{¶ 9} James's change-of-plea hearing occurred on May 30, 2014. Following a plea colloquy, the trial court accepted James's plea, entered a finding of guilt, and

convicted him of complicity to commit aggravated murder, in violation of R.C. 2923.03(A)(2) and 2903.01(B) and (F), an unclassified felony. A nolle prosequi was entered as to Counts 2 and 3 and all gun specifications. According to the transcript from the hearing, Phillip reached a similar agreement with the State, and the hearings were held contemporaneously.

{¶ 10} At the hearing, the State indicated that if the case against James had gone to trial, it would have presented testimony from an expert in DNA analysis about a "sweatshirt that was . . . involved in this particular case" stating that the sweatshirt contained DNA from James, Ronald Rooker, and the murder victim.

{¶ 11} Following a sentencing hearing, the trial court sentenced James to serve a term of life in prison, with eligibility of parole after 25 years, plus a mandatory five years of post-release control. James did not appeal the June 9, 2014 final judgment of conviction.

{¶ 12} Less than a year into his sentence, on February 15, 2015, James filed a pro se motion to withdraw his guilty plea under Crim.R. 32.1. James claimed that his "sole reason" for pleading guilty was that he was told by "defendant's counsel" that the plea offered to his "brother co-defendant [i.e. Phillip]. . . would be taken off the table" if James did not accept the State's offer. James argued that it was "patently unlawful to use one's love for his family member to coerce him into pleading guilty." The trial court denied James's motion. James appealed, but the appeal was dismissed for his failure to file an appellate brief. *State v. James Allen,* case No. L-15-1202 (Feb. 29, 2016).

4.

{¶ 13} On January 16, 2024, nearly ten years after his guilty plea, James filed a "motion to permit defendant to withdraw plea" and requested an evidentiary hearing. In support of this motion, James attached various exhibits including his own affidavit, and an affidavit from Thessa Canty dated April 27, 2021.

{¶ 14} According to James's affidavit, he did not enter his guilty plea knowingly, intelligently, or voluntarily because (1) he never "completely reviewed" discovery with his counsel; (2) he "completely asserted" his innocence before entering his plea, (3) at the time of the plea he was "nineteen years old with a tenth grade education," (4) he did not understand the decisions he was being asked to make, and (5) he was pressured into the guilty plea during a "back room" meeting with his lawyers, the sheriff's deputies, Phillip, Phillips's lawyer, Phillip's mother (Princess Walker), and Phillip's aunt. James alleges that his own parents "were not allowed to [attend]" that meeting, and he felt "very alone." He further claims that during the meeting, "everyone in the room" told James to "take the plea, especially [Phillips's] family." James felt "pressured" to plead guilty and felt he had "no choice." James also asserts that at the time he entered his plea, he "did not know anything" about the investigating officer, and had he known "that the officers investigating my case were not honest, I would not have taken the plea."

{¶ 15} The investigating officer's alleged dishonesty is the subject of Canty's affidavit. In that affidavit, Canty claims that she was the unidentified person that provided the DNA-laced jacket to Detective Anderson. She alleges that Detective Anderson fabricated her involvement in this case and then threatened her and her

5.

daughter with prosecution if she did not go along with his lie.  Canty's affidavit states, in its entirety:

> I, Thessa Canty, currently of xxxx Hawthorne, Toledo, Ohio 43606, date of birth x/x/1967, formally retract any statement previously given to the Toledo Police regarding the case of James Allen, Lucas County Common Pleas Court case number CR13-1917.  Sometime around June 4, 2013, Detective Larry Anderson contacted me and told me I needed to say I discovered a piece of evidence that was in my possession.  He had a brown bag with him and inside was a sweatshirt.  Detective Anderson told me I needed to say that he received the sweatshirt from me.  THIS WAS NEVER IN MY POSSESSION.  I Had never seen what Detective Anderson had until he came to my house with the bag.  I later was told that this sweatshirt allegedly contained the DNA of three different people; blood of the victim; unidentified DNA on the inner collar, and "touch DNA" of James Allen.  Detective Anderson told me that he would see that my daughter, ["M.C."], was prosecuted to the fullest extent of the law if I did not comply.  In addition, Detective Anderson informed that he would find a way to charge ME with complicity to whatever James Allen was charged with.  He threatened me and scared me into giving a false statement to the police in order to save me and my family.  I knew no one would believe me since my daughter was currently in custody.  This has haunted me all of these years and I just want to do what I can to make things right and let the truth be known.  (Emphasis in original.)

{¶ 16} In addition to these affidavits, James also attached Detective Anderson's disciplinary file—which, he claims, were "*Brady* materials"—and a Lucas County Sheriff's report regarding its receipt of the jacket from Detective Anderson.

{¶ 17} Relying upon these exhibits, James argued in his motion that his plea was involuntary because he received ineffective assistance of counsel for counsel's failure to investigate Detective Anderson, the State failed to produce purportedly exculpatory evidence, and he was coerced into pleading guilty.

6.

{¶ 18} On April 17, 2024, the trial court denied James's motion, without a hearing. The trial court found that James's credibility was "affect[ed]" because he filed the motion ten years after his plea, and three years after Canty signed her affidavit. The court concluded that the trial court fully complied with Crim.R. 11(C)(2), and anything that "was raised or could have been raised" in his 2015 motion to withdraw plea "may be res judicata." Finally, the trial court found that "[s]ome of the other arguments about ineffective assistance of counsel and Brady issues dealing with the detective may have been relevant had the case gone to trial, but not as to the pleas" and the "detective's discipline was not relevant to guilt or innocence."

{¶ 19} James appealed and raises two assignments of error for our review.

> **First Assignment of Error**: The trial court erred as an abuse of discretion in denying Mr. Allen's Motion to Permit Defendant to Withdraw Plea because Mr. Allen sufficiently established the existence of a manifest injustice in this case.

> **Second Assignment of Error**: The trial court abused its discretion by denying Mr. Allen's Motion to Permit Defendant to Withdraw Plea without first holding an evidentiary hearing.

## II. Law and Analysis

{¶ 20} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 21} "A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v.*

7.

*Straley*, 2019-Ohio-5206, ¶ 13, quoting *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. "A 'manifest injustice' is a 'clear or openly unjust act, *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208 (1998) and relates to a fundamental flaw in the plea proceedings resulting in a miscarriage of justice. *State v. Tekulve*, 2010-Ohio-3604, ¶ 7 (1st Dist.)." *Id.* at ¶ 14. The term "has been variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases." *Id.,* quoting *Smith* at 264.

{¶ 22} In his first assignment of error, James argues that the trial court erred by denying his postsentence withdrawal motion because the undue pressure exerted upon Allen during the "back room" meeting before his plea—combined with the "irregularity of [his] plea proceeding" where the transcript shows that "meaningful questions are asked without the court ensuring it received an answer from Mr. Allen"—constituted a manifest injustice. In addition, James argues that the trial court ignored the substance of Thessa Canty's affidavit which, if "held true, would show that the most significant piece of evidence connecting Mr. Allen to the crime for which he was charged, a sweatshirt containing his DNA, a co-defendant's DNA, and the DNA of the victim, was not obtained by lawful means" and "[w]ithout this evidence, it is even more unlikely that Mr. Allen would have entered into the plea… " In his second assignment of error, James argues

8.

that the trial court erred in denying his motion without first holding an evidentiary hearing.[1]

{¶ 23} We will address his two assignments of error out of order, starting with the trial court's failure to hold an evidentiary hearing.

{¶ 24} "A trial court's decision to deny a post-sentence motion to withdraw a guilty plea and the decision whether to hold a hearing on the motion are subject to review for abuse of discretion." *State v. Spivakov*, 2013-Ohio-3343, ¶ 12 (10th Dist.). An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 25} A hearing is required on a postsentence motion under Crim.R. 32.1 if "the facts as alleged by the appellant, taken as true, would require the trial court to permit withdrawal of the plea." *State v. Boyd,* 2023-Ohio-2618, ¶ 24 (6th Dist.), quoting *State v. Beachum*, 2012-Ohio-285, ¶ 22 (6th Dist.); *accord State v. Ferguson,* 2015-Ohio-1463, ¶ 7 (1st Dist.), quoting *State v. Dye,* 2013-Ohio-1626, ¶ 6 ("While Crim.R. 32.1 does not require a hearing on a postsentence motion to withdraw a guilty plea, 'this court has effectively adopted a rule that requires a hearing if the facts alleged in the motion, and accepted as true by the trial court, would require that the plea be withdrawn.'").

---

[1] Notably, James does not assign error regarding the trial court's rejection of his claim that Detective Anderson's disciplinary file is relevant *Brady* material, and the State's failure to disclose these materials—in and of itself—creates a manifest injustice sufficient to allow James to withdraw his plea.

{¶ 26} On appeal, James argues that a hearing is required regarding (1) his allegations that he was pressured to plead guilty and that he did not "fully understand" what was happening during his plea colloquy, and (2) Canty's allegations that Detective Anderson forced her to fabricate DNA evidence against him. We analyze these allegations separately.

1. **A hearing is not required on James's allegations regarding the plea colloquy and his alleged pre-plea coercion.**

{¶ 27} James argues that he suffered a manifest injustice when he was coerced into pleading guilty during a "back room" meeting with Phillip and Phillip's family members, among others, that occurred just before his change-of-plea hearing. He claims that the coercion he experienced during that meeting later "flowed into the courtroom," where he went "through the entirety of the plea with his half-brother feet away from him" and "[t]he lack of time and space between these two actions ensured that the coercion was continuous." He also claims additional "irregularities" occurred during the hearing because the trial court addressed James and Phillip "simultaneously" and failed to verify that James understood certain "meaningful questions," the trial court misstated rights that James "was signing away," and the trial court proceeded "unphased" when James "answered in the negative to a pertinent question." James claims that a hearing on his motion "would have flushed out the record, allowing more insight into the exact conditions of the pre-plea conference" and "[i]t would have allowed the court to appropriately assess the credibility of the details Mr. Allen provides in his affidavit,"

10.

which include allegations that he did not fully understand what was happening at the hearing.

{¶ 28} On their face, these allegations are barred by res judicata. "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or claimed lack of due process that was raised *or* could have been raised by the defendant at trial, which resulted in that judgment of conviction, or on an appeal from that judgment." (Emphasis omitted.) *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph nine of the syllabus. "[T]he doctrine serves to preclude a defendant who has had his day in court from seeking a second on that same issue. In so doing, res judicata promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard." *State v. Saxon*, 2006-Ohio-1245, ¶ 18. "Res judicata generally bars a defendant from raising claims in a Crim.R. 32.1 postsentencing motion to withdraw a guilty plea that he raised or could have raised on direct appeal." *Straley* at ¶ 23, citing *State v. Ketterer,* 2010-Ohio-3831, ¶ 59. "Res judicata [also] serves as a bar for successive motions to withdraw guilty pleas under Crim.R. 32.1, when the grounds to withdraw the plea were raised or could have been raised in the initial motion to withdraw." *State v. Boyd*, 2023-Ohio-2618, ¶ 20 (6th Dist.), quoting *State v. Phillips*, 2019-Ohio-3707, ¶ 11 (6th Dist.).

11.

**{¶ 29}** As discussed, James previously argued, in his 2015 motion to withdraw his guilty plea, that he was "coerce[d]. . . into pleading guilty" when he was "told [that] if [he] did not plead guilty, his brother's plea deal would be taken off the table."[2]  This is "precisely the sort of repeated attack[] on a final judgment that the doctrine of res judicata is intended to prevent." *Boyd* at ¶ 21; *see also State v. Lofton*, 2017-Ohio-757, ¶ 16 (4th Dist.), quoting *State v. Brown*, 2004-Ohio–6421 (8th Dist.) ("[A] Crim.R. 32.1 motion will be denied when it asserts grounds for relief that were or should have been asserted in a previous Crim.R. 32.1 motion.").

**{¶ 30}** In addition, James's claims regarding the trial court's plea colloquy are also barred by res judicata.  These claims necessarily appear on the face of the record.  Indeed, James argues that "the irregularity of this plea proceeding [is] evident in the transcript itself."  Therefore, this issue could and should have been raised on direct appeal.  Accordingly, James's claim that he suffered a manifest injustice during his change-of-plea hearing is barred by res judicata.  *Accord Mobley* at ¶ 12. (finding successive motion to withdraw guilty plea barred by res judicata because "all of appellant's claims appear on the face of the record and could have been raised on direct appeal"); *Boyd* at ¶ 21 (Res judicata applies where "[a]ll" of the assignments of error involve misconduct and/or error by counsel, the State, and the trial court that "could have been raised on direct appeal from [the defendant's] conviction had [the defendant] timely sought such an appeal." ); *State v. Frisbie*, 2024-Ohio-5523, ¶ 17 (6th Dist.), *appeal not allowed*, 2025-Ohio-857

---

[2]  James's 2015 motion to withdraw his plea was unsupported by any sworn testimony.

12.

("Frisbie could have appealed his sentencing judgment and raised the post-release control issue at that time. He did not. . . . Thus, the trial court properly concluded that Frisbie's arguments relating to the supposed impact of the post-release control advisements on the voluntariness of his plea were barred by res judicata.").

{¶ 31} Because res judicata bars James's claims regarding (1) his alleged pre-plea coercion, and (2) the alleged irregularities of the plea colloquy, the trial court was not required to hold a hearing on these claims. The trial court, therefore, did not abuse its discretion when it denied the motion, without a hearing, to the extent that it was grounded upon these two claims. These facts as alleged by James—even if taken as true—would not create a manifest injustice requiring the trial court to permit withdrawal of the plea. *Boyd* at ¶ 24.

2. **The trial court abused its discretion by denying the motion to withdraw plea without a hearing on the allegations of Canty's affidavit.**

{¶ 32} James's motion to withdraw plea also attached the Canty affidavit, which alleged that material evidence—i.e., a sweatshirt/jacket containing DNA belonging to James, the victim, and a co-defendant—was fabricated by the lead detective, Detective Anderson. Canty claims that Detective Anderson brought a sweatshirt in a bag to her house and coerced her to falsely claim that *she* provided the sweatshirt to *him*. Canty says Detective Anderson threatened her and her daughter with prosecution if she did not comply. Canty states that she later learned that the sweatshirt contained the DNA of three people, including "touch" DNA of James Allen and blood of the victim. She says that she "made the false statement to the police in order to save me and my family" and that

13.

"[t]his has haunted [her] all of these years" and she just wants to "make things right and let the truth be known."

{¶ 33} In his motion, James argued that his attorneys should have been more diligent in discovering the "blatant and disgusting abuses of power and poor behavior on behalf of the leading investigating Detective Anderson." In James's affidavit in support of his motion, he states "[h]ad I known that the officers investigating my case were not honest, I would not have taken the plea." He argued that under these circumstances, "enforcement of his plea" would be "unconstitutional under both the United States and Ohio Constitutions."

{¶ 34} The trial court denied James's motion to withdraw plea without addressing the substance of Canty's allegations. Instead, the trial court found that the ten-year gap between James's guilty plea in 2014 and motion to withdraw in 2024—combined with the fact that his motion was filed three years after Canty signed her affidavit— undermined James's credibility as a matter of law, and noted that "[s]ome of the other arguments…dealing with the detective may have been relevant had the case gone to trial, but not as to the pleas." There are several problems with these conclusions.

{¶ 35} First and foremost, Canty's allegations regarding Detective Anderson are directly relevant to the plea itself. James's own affidavit states that he "would not have taken the plea" if he had known that the investigators "were not honest," and it is well established that James had a constitutional right to be free from prosecution based on deliberately fabricated evidence. In *Hysler v. Florida,* 315 U.S. 411, 413 (1942), the

14.

Supreme Court observed that if "responsible officials knowingly use false testimony which was extorted from a witness 'by violence and torture,' one convicted may claim the protection of the Due Process Clause against a conviction based upon such testimony."

{¶ 36} Canty's allegations, if true, would establish a serious due process violation—which would be a manifest injustice sufficient to permit James to withdraw his plea. A hearing on these allegations is therefore required. *Boyd* at ¶ 24. As James argues on appeal, a hearing will allow the trial court "a greater means to assess the credibility of [Canty's] assertions of wrongdoing by Det. Anderson" and "allow[] for the exploration of the significance of the sweatshirt as a piece of evidence in the case as it relates to plea considerations."

{¶ 37} Second, because his motion raises a plausible claim of manifest injustice, James's right to be heard through an evidentiary hearing cannot be forfeited by delay alone. It is true that "undue delay" is a factor adversely affecting the credibility of the defendant when considering a motion to withdraw plea. *State v. Bush,* 2002–Ohio–3993, ¶ 14; *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph three of the syllabus. But here, the record is silent regarding the reason for the delay, so it is not clear that James's delay was, in fact, "undue." And while James's *own* credibility is certainly at issue, the manifest injustice claim hinges primarily on the credibility of a third party—who

provided an explanation for her delay in coming forward.[3] Finally, there is nothing in the record that conclusively contradicts the allegations of Canty's affidavit. *See State v. Christley*, 2000 WL 655448, *2 (11th Dist. May 19, 2000) ("[A] hearing is not required where the record, on its face, conclusively and irrefutably contradicts the allegations in support of the motion to withdraw."). Under these circumstances, a trial court may not summarily reject serious constitutional claims—alleging facts that, if true, would establish manifest injustice—based solely on perceived delay, particularly when credibility is central and therefore must be tested through live testimony. *See State v. Kiss*, 2009-Ohio-739, ¶ 28 (reversing the trial court's denial of motion to withdraw plea and remanding for a hearing because the "affidavit establishes the possibility of a manifest injustice" and "[b]ecause there was no hearing, as was requested, the record is silent as to the reason for the 'extreme delay'").

{¶ 38} Third, despite the weighty issues raised in the Canty affidavit, the trial court wholly disregarded it. Although not explicitly stated in its opinion, the trial court necessarily discounted Canty's credibility entirely. *See State v. West*, 2017-Ohio-5596, ¶38 ("Rejecting West's actual-innocence claim without an evidentiary hearing necessarily required the common pleas court to wholly discount the credibility of Jason West's affidavit exonerating his father."). When exercising its discretion to assess the credibility of an affidavit without first conducting an evidentiary hearing on a motion to withdraw, a

---

[3] Canty states that she was "scared" by Det. Anderson's alleged threats and thought that "no one would believe [her.]" She states "[t]his has haunted me all of these years and I just want to do what I can to make things right and let the truth be known."

16.

court must consider all relevant factors including whether (1) the same judge who reviewed the petition also presided at trial; (2) multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person; (3) the affidavit relies on hearsay; (4) the affiant is related to the defendant or otherwise interested in the success of his efforts; (5) the affidavit contradicts defense evidence; (6) the affidavit is contradicted by any other sworn statement of the affiant; and (7) the affiant is internally consistent. *State v. Guevarra*, 2022-Ohio-1974, ¶ 20-21 (6th Dist.) (adopting the factors of *State v. Calhoun*, 86 Ohio St.3d 279, 284-85 (1999) for purposes of considering the credibility of affidavits supporting Crim.R. 32.1 motions without a hearing); *see also West* at ¶ 38-39 (applying *Calhoun* factors when determining if trial court abused its discretion when wholly discounting the credibility of an affidavit).

{¶ 39} Here, the record shows that the judge who reviewed James's motion did not preside at the plea hearing. There is nothing in the record to suggest that Canty had any interest in James's success beyond remedying an injustice. Canty's affidavit is based upon first-hand knowledge, and it does not contradict any evidence proffered by the defense in the trial court. The affidavit is internally consistent, and it does not contradict any prior sworn testimony by Canty herself. Under these circumstances, we find that the trial court abused its discretion in discounting the credibility of Canty's affidavit without a hearing. *Accord West*, ¶ 38 (finding, after considering the *Calhoun* factors, that the trial court abused its discretion "wholly discounting" the credibility of an affidavit, and

17.

remanding for a hearing because the allegations of the affidavit, if true, would require the withdrawal of defendant's pleas).

{¶ 40} For all these reasons, we find that the trial court abused its discretion in denying James's motion to withdraw without a hearing to the extent that motion was premised upon the allegations of Canty's affidavit. Canty's affidavit, if true, would establish a manifest injustice permitting James to withdraw his plea. We therefore find the second assignment of error well taken, in part, and remand for an evidentiary hearing on the issues raised by Canty's affidavit.

{¶ 41} Finally, given our resolution of the second assignment of error, we find the first assignment of error to be moot and therefore decline to address it.

### III. Conclusion

{¶ 42} We conclude that res judicata bars James's claims regarding (1) his alleged pre-plea coercion, and (2) the alleged irregularities of the plea hearing. The trial court therefore did not abuse its discretion in denying the motion without a hearing to the extent the motion relied upon these two specific claims as demonstrating a manifest injustice. For this reason, the second assignment of error is found not well taken, in part.

{¶ 43} We also conclude, however, that the Canty affidavit raises serious allegations regarding a potential due process violation that, if true, would demonstrate a manifest injustice permitting James to withdraw his plea. The trial court therefore abused its discretion in denying the motion without a hearing to the extent the motion was grounded upon the allegations of Canty's affidavit. For this reason, we find the second

18.

assignment of error well taken, in part, and remand this matter to the trial court for an evidentiary hearing on those issues.

{¶ 44} Finally, we conclude that the first assignment of error is moot, and decline to address it.

{¶ 45} The April 17, 2024 judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part, and remanded to the trial court for an evidentiary hearing. Pursuant to App.R. 24, the parties are ordered to share the costs of this appeal.

Judgment affirmed, in part,<br>
reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.            _____
                                                         JUDGE

Christine E. Mayle, J.         
CONCUR.
                                                        _____
                                                         JUDGE

Gene A. Zmuda, J..          
DISSENTS AND WRITES
SEPARATELY.

**ZMUDA, J., dissenting.**

{¶ 46} Because I disagree regarding resolution of the second assignment of error, I write separately.

**{¶ 47}** Allen asserts two assignments of error in his appeal:

> **First Assignment of Error**: The trial court erred as an abuse of discretion in denying Mr. Allen's Motion to Permit Defendant to Withdraw Plea because Mr. Allen sufficiently established the existence of a manifest injustice in this case.

> **Second Assignment of Error**: The trial court abused its discretion by denying Mr. Allen's Motion to Permit Defendant to Withdraw Plea without first holding an evidentiary hearing.

**{¶ 48}** Allen challenges the trial court's denial of his motion to withdraw plea, post-sentencing, arguing he was coerced into entering his guilty plea and that the misconduct of Detective Larry Anderson demonstrated a manifest injustice. Allen also argued the trial court erred in not holding a hearing regarding the validity of his plea and the allegations implicating Detective Anderson. I believe the doctrine of res judicata applies to bar Allen's claims. Furthermore, because I disagree with the determination that hearing is necessary, I would address both assignments of error.

**{¶ 49}** The doctrine of res judicata applies to Allen's claims in support of his Crim.R. 32.1 motion. *State v. Davis*, 2020-Ohio-4539, ¶ 25 (6th Dist.). "Res judicata generally bars a defendant from raising claims in a Crim.R. 32.1 postsentencing motion to withdraw a guilty plea that he raised or could have raised on direct appeal." (Citation omitted) *State v. Straley*, 2019-Ohio-5206, ¶ 23. Thus, before applying the manifest injustice standard, we must first consider whether res judicata applies. *Davis* at ¶ 25, citing *State v. Reynolds,* 2002-Ohio-2823, ¶ 27 (3d Dist.); Crim.R. 32.1.

**{¶ 50}** In this case, the majority determined Allen's claim regarding a coerced plea is barred by res judicata, and I agree with that determination. However, I would also find

20.

that Allen's claim, relative to the evidence produced by Detective Anderson, purportedly through a confidential informant (CI), is similar to his evidentiary challenge raised prior to his guilty plea, and therefore, this claim is also barred by res judicata. Additionally, claims relative to the CI and Detective Anderson's conduct do not demonstrate a manifest injustice, requiring withdrawal of Allen's plea.

{¶ 51} First, Allen challenged the admissibility of Detective Anderson's evidence in the trial court, with two motions to compel the identity of the CI, filed on December 17, 2013 and April 7, 2014. The trial court held a hearing on the motions on April 23, 2014, and Detective Anderson testified, claiming he obtained the evidence through a CI in another jurisdiction, more than two weeks after the incident. Detective Anderson did not identify the CI. On May 8, 2014, Allen filed a brief in further support of his motion to compel seeking the identity of the CI or exclusion of the evidence.

{¶ 52} Allen entered his guilty plea on May 30, 2014, prior to any ruling by the trial court, effectively withdrawing his motions to compel and his evidentiary challenge. Had Allen persisted in seeking to expose the identity of the CI, he might have learned the identity prior to judgment or at least preserved the matter as an issue for appeal. Despite Allen's additional evidence of Detective Anderson's misconduct, the claim he now raises in that regard, relative to the validity of his guilty plea, was a matter he initially litigated before deciding to enter his plea. Therefore, to the extent that Allen attempts to raise issues he asserted and then withdrew prior to his plea, those claims are subject to the bar of res judicata. (Citations omitted) *State v. Kelm,* 2013-Ohio-202, ¶ 9-10 (6th Dist.) ("res

21.

judicata bars successive Crim.R. 32.1 motions to withdraw guilty pleas, where the grounds to withdraw the plea were raised or could have been raised in the initial motion to withdraw."). As to his remaining claims and new evidence, we apply the manifest injustice standard.

{¶ 53} After his sentencing, on February 15, 2015, Allen filed a pro se motion to withdraw his guilty plea under Crim.R. 32.1, arguing he was coerced into entering his guilty plea. The trial court denied the motion and Allen did not pursue an appeal.

{¶ 54} Allen's current motion to withdraw his guilty plea was filed January 16, 2024, and he again raised the claim of a coerced plea. Additionally, Allen argued that his trial counsel was ineffective in failing to investigate Detective Anderson, with an affidavit from Thessa Canty, who identified herself as Anderson's CI in a 2021 affidavit. Canty retracted any statements provided to Toledo Police regarding Allen and alleged that Anderson forced her to lie about giving Anderson the evidence, with Canty stating she never had possession of any evidence related to Allen's case. In addition to the Canty affidavit, Allen attached documents that included a claimed disciplinary file for Detective Anderson and his own affidavit. The trial court denied Allen's motion without hearing.

{¶ 55} In denying Allen's motion, the trial court noted that Allen admitted he entered the victim's residence with a loaded firearm with the intent to rob the victim, and the victim was shot three times and died as a result. The trial court also noted Allen's second motion to withdraw his guilty plea was filed almost 10 years after he entered the

22.

plea, and three years after Canty executed her affidavit. In considering Allen's 2024 motion, the trial court determined some issues raised by Allen were barred by res judicata, and that Allen failed to demonstrate the necessary manifest injustice which would require withdrawal of his guilty plea.

{¶ 56} Allen had the burden of demonstrating a manifest injustice, or a "fundamental flaw in the plea proceedings." (Citations omitted) *State v. Reznickcheck,* 2004-Ohio-4801, ¶ 11-12 (6th Dist.). The trial court reviewed the record and determined Allen failed to demonstrate manifest injustice. Our role on appeal is to review the trial court's determination for abuse of discretion. *Reznickcheck* at ¶ 6, citing *State v. Smtih,* 49 Ohio St.2d 251 (1977), paragraph two of the syllabus; *State v. Nathan,* 99 Ohio App.3d. 722, 725 (3d Dist.1995). I find no abuse of discretion by the trial court in denying Allen's motion in its entirety without hearing.

{¶ 57} "This court has held that '[n]o hearing is required on postsentence motions under Crim.R. 32.1 unless the facts as alleged by the appellant, taken as true, would require the trial court to permit withdrawal of the plea.'" *State v. Guevarra*, 2022-Ohio-1974, ¶ 18 (6th Dist.), quoting *State v. Beachum*, 2012-Ohio-285, ¶ 22 (6th Dist.), citing *State v. Blatnik*, 17 Ohio App.3d 201, 204 (6th Dist. 1984).

{¶ 58} In this case, Allen challenged the admissibility of the sweatshirt based on the circumstances of Detective Anderson's discovery of the sweatshirt, questioning the chain of evidence and the validity of the evidence. Allen abandoned this challenge in entering his guilty plea, and Allen has not argued that the truth of the Canty Affidavit

23.

would necessitate withdrawal of his guilty plea. Significantly, Allen does not claim innocence and has never asserted his innocence as a basis to withdraw his plea. Allen mainly relies on the shocking breadth of Detective Anderson's misconduct, maintaining the misconduct overrides all other factors in his case, creating a manifest injustice. In doing so, Allen fails to address other evidence that the state could have presented to prove his guilt, including testimony of two of his co-defendants.

{¶ 59} As noted by the majority, the trial of two of Allen's codefendants was severed based on testimony those codefendants would provide against Allen, and additional circumstantial evidence was noted by the state that would sustain Allen's conviction. Thus, based on the Canty affidavit and evidence of Detective Anderson's misconduct, Allen might prevail on excluding the evidence of the sweatshirt, but the state had other evidence to present in obtaining a conviction. At best, Allen's affidavit demonstrates egregious police misconduct that would require exclusion of Detective Anderson's evidence, but falls short of demonstrating a manifest injustice, considering other evidence possessed by the state, implicating Allen. [4]

{¶ 60} Under the "manifest injustice" standard, "a postsentence withdrawal motion is allowable only in extraordinary cases." *State v. Straley*, 2019-Ohio-5206, ¶ 14, quoting *State v. Smith*, 49 Ohio St.2d 261, 264 (1977). Furthermore, no hearing is

---

[4] Because Allen entered a plea and did not go to trial, Allen's case is distinguishable from *Hysler v. Florida,* 315 U.S. 411, 413 (1942), in which false testimony, extorted from a witness at trial 'by violence and torture,' provided the basis for conviction.

24.

required unless the facts, taken as true, would require the trial court to permit withdrawal of the plea. *Davis,* 2020-Ohio-4539, at ¶ 23 (6th Dist.). Allen has presented evidence of police misconduct but has not demonstrated this alleged misconduct – if taken as true – would require withdrawal of his guilty plea, considering the other evidence the state could have proffered at trial to secure conviction. As such, the trial court did not commit an abuse of discretion in denying Allen's motion without hearing, despite the extraordinary allegations regarding Detective Anderson's conduct. To determine otherwise would lessen the standard of "manifest injustice," and permit reopening of all cases based on the misconduct of an officer involved in the investigation.

{¶ 61} Therefore, I respectfully dissent.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.